[No. B019296. Second Dist., Div. Four. Sept. 24, 1986.]

DARRELL THOMAS O'NEAL, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Steffan Imhoff, Deputy State Public Defender, for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan and Brent Riggs, Deputy District Attorneys, for Real Party in Interest.

OPINION

**WOODS, P. J.**—By petition for writ of mandate and/or prohibition filed in propria persona, Darrell Thomas O'Neal attacks the superior court's denial of his motion to set aside the information pursuant to Penal Code section 995.[1]

The primary issue presented is whether a magistrate who reviews a defendant's record in setting bail at the arraignment is disqualified from presiding over the defendant's preliminary hearing due to section 1204.5, which allows consideration of a defendant's arrest or conviction record only for specified situations, including a bail application.

---

[1] All code references are to the Penal Code unless otherwise noted.

For the reasons discussed below, we conclude that, although it is the better practice to utilize different judges for the two hearings, no absolute disqualification exists. Therefore, the writ is denied.

The facts are simple and undisputed. Petitioner was arrested on April 6, 1985. On April 10, a complaint was filed charging petitioner with two counts of attempted murder (§§ 664/187), two counts of assault with a deadly weapon on a peace officer (§ 245, subd. (b)), one count of assault with a firearm (§ 245, subd. (a)(2)), and one count of being an ex-felon in possession of a firearm (§ 12021). It was further alleged that he had personally used a shotgun (§§ 12022.5, 1203.06, subd. (a)(1)), committed the felonies while on state prison parole (§ 1203.085, subd. (b)), and previously served a prison term for being an ex-felon in possession of a firearm (§ 667.5, subd. (b)). The recommended bail was $50,000.

On April 11, 1985, petitioner appeared for arraignment before Municipal Court Judge William H. Seelicke of the Antelope Judicial District. He pleaded not guilty, a preliminary hearing date was set, and a motion to dismiss for delay in the arraignment was denied. The court then inquired: "Do you wish to be heard on the subject of bail?" Petitioner's counsel responded: "No, your Honor. We will submit it." The court stated: "Mr. O'Neal, I have examined your record. The Court will set bail in the amount of $100,000. The Court feels that the charges are serious enough, and the violent potential such in light of the prior record featuring also failures to appear that Mr. O'Neal constitutes a danger to public safety."

Petitioner appeared in propria persona for the preliminary hearing, which began on September 19, 1985. Judge Seelicke was again presiding. Prior to testimony, petitioner stated: "Before we start the prelim I would like to make a motion or have you disqualify yourself because of prejudice because of the arraignment." Judge Seelicke denied the motion without further discussion.

At the conclusion of the preliminary hearing, petitioner was held to answer on the complaint.

On January 14, 1986, petitioner (again represented by counsel) filed a written motion to dismiss the information pursuant to section 995. Among the grounds raised were that the magistrate violated section 1204.5 by refusing to disqualify himself from the preliminary hearing, and that section 825 was breached because petitioner was not arraigned within two days of his arrest.

The section 995 motion was heard by Superior Court Judge Sherman Juster on February 18, 1986. He ruled that it was improper under section

1204.5 to have the same judge preside both at the arraignment and the preliminary hearing,[2] but that this technical impropriety was not "reachable by 995," as there was sufficient objective evidence at the preliminary hearing to justify holding petitioner to answer.

Petitioner filed the instant writ petition, raising two issues: (1) the trial court's alleged failure to abide by section 1204.5 and disqualify itself from the preliminary hearing, and (2) the asserted violation of section 825 in the delayed arraignment.

We issued an alternative writ on the former issue, stayed the trial, and appointed the State Public Defender to represent petitioner.

I

We may quickly dispose of petitioner's section 825 claim.

Section 825 provides in pertinent part: "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; provided, however, that when the two days prescribed herein expire at a time when the court in which the magistrate is sitting is not in session, such time shall be extended to include the duration of the next regular court session on the judicial day immediately following."

 Petitioner argues that section 825 was violated as he was arrested around 3:30 a.m. on Saturday, April 6 and not arraigned until 3:30 p.m. on Thursday, April 11. He further maintains that the delay resulted in a loss of evidence to him. The contention lacks merit because, as real party in interest points out, the Department of Corrections placed a detainer on petitioner on April 9, 1985. Once that hold was in place, petitioner was no longer detained "prior to arraignment," and section 825 ceased to operate. (*People* v. *Gordon* (1978) 84 Cal.App.3d 913, 923 [149 Cal.Rptr. 91].)

II

We next consider petitioner's claim under section 1204.5, which provides: "In any criminal action, after the filing of any complaint or other accusatory pleading and before a plea, finding, or verdict of guilty, no judge of any court shall read or consider any written report of any law enforcement officer or witness to any offense, or any information reflecting the arrest or con-

---

[2]The judge noted that there were three judges available "downstairs," so a different judge could have heard the preliminary hearing.

viction record of a defendant, or any affidavit or representation of any kind, verbal or written, except as provided in the rules of evidence applicable at the trial, or with the consent of the accused given in open court, or affidavits in connection with the issuance of a warrant or the hearing of any law and motion matter, or any application for an order fixing or changing bail, or a petition for a writ."

Petitioner maintains that the section was designed to provide a factfinder who is unbiased by knowledge of a defendant's prior record, and that it precluded the magistrate who learned of his record in setting bail from presiding at his preliminary hearing.

We see nothing in the wording of the statute to support the automatic disqualification petitioner suggests. The section simply says that a defendant's record can only be reviewed in specified situations. There is no language indicating what a judge may or may not do after conducting such review pursuant to one of those exceptions.

The legislative history underlying section 1204.5 also does not support petitioner's disqualification argument.

Senator Moscone introduced Senate Bill No. 580 in 1968 to add section 1204.5 to the Penal Code. (Stats. 1968, ch. 1362, § 1, p. 2599; Summary Dig. (1968 Reg. Sess.) pp. 211-212.) The bill, which was sponsored by the State Bar, was originally proposed by the Santa Monica Bay District Bar Association. (43 State Bar J. (1968) 498.) The resolution proposed by that Bar Association gave the following statement of reasons: "It has become the practice of many of the courts of this State to require the prosecuting agency in any criminal case to file contemporaneously with the criminal complaint against an accused, a copy of the investigating officer's arrest report together with a 'make' or 'rap' sheet purporting to contain the prior criminal record of the accused.

"Without the knowledge of the accused, the report and 'make' sheet are read and considered by judges prior to trial, during the course of a trial, and at the sentencing stage. Many courts uniformly accept the contents of such documents as the gospel truth, and rely upon said contents rather than upon properly adduced evidence. Such courts rely upon such information in determining the guilt or innocence of a defendant, or in making decisions upon pre-trial motions. The presence of the arrest report and 'make' sheet in the official court file is thus highly prejudicial to an accused person, particularly where a jury has been waived.

"Prior to the conviction of the accused, the trial court should have no interest in his prior record, except as it may be admitted in evidence during

the course of the trial. The arrest report, on the other hand, is no more than a written statement of one of the parties version of the facts. There is no more reason for such report to be before the court than there is for a report by the accused of his version of the facts. Their presence before the court deprives the accused of his constitutional right to be confronted by the witnesses against him; the right to cross-examine such witnesses; and the right of due process of law.

"In several cases in which counsel who are members of the proponent bar association have asked to see criminal case files, the clerk has removed the arrest report and 'make' sheet before delivering the files to counsel. When asked to also deliver the documents so removed, the clerks have refused to do so. However, when the files have been returned, the clerks have replaced the arrest report and 'make' sheet before returning the files to the judge. This, we submit, is a tacit admission of wrong.

"With respect to the exceptions, Section 1203 permits consideration of the facts surrounding the crime and the defendant's past record as contained in the probation officer's report. Section 1204 requires that all evidence in aggravation or mitigation of punishment be presented at the probation and sentencing proceedings 'by the testimony of witnesses examined in open court,' except for depositions of witnesses so sick and infirm as to be unable to attend, and except as provided in Section 1203, supra. Section 40806 of the Vehicle Code allows the judge to consider reports of law enforcement officers and witnesses when passing sentences, *provided* the judge fully informs defendant of all statements in those reports and gives defendant an opportunity to answer and produce witnesses in rebuttal. The other exceptions are self-evident." (Italics in original.)

The original proposed section did not include an exception for "any application for an order fixing or changing bail." That language appears in the form of the proposal which was adopted by the State Bar as 1966 Conference Resolution No. 72 (43 State Bar J., *supra,* State Bar Legislative Program, 494, 498.) The State Bar's Board of Governors placed the item on its 1968 legislative program. The statement of reasons by the State Bar's legislative representative reiterated the concerns of the local bar association concerning the risk of prejudice and explained the bail exception as follows: "It is recognized that issues can arise which may justify or even compel consideration of the arrest report or the accused's criminal record by the court. In the absence of special circumstances, however, there is neither need nor justification for the trial court to have before it the unchallenged and untested information contained in such records.

"Except as it may be relevant to a proper pre-trial issue (such as the fixing of bail), or admissible as evidence on an issue at trial (as on the truth

of alleged prior convictions), or pertinent to a post-conviction disposition of the case, the record of the accused's prior criminal activity is irrelevant and should be of no interest to the trial judge."

The legislative representative further stated: "It should be noted that the present proposal does not limit or prohibit the proper use of arrest reports or records of prior criminal activity. For example, . . . the proposal specifically authorizes the use of such documents in connection with issues relating to bail."

The Senate Committee on the Judiciary's analysis of Senate Bill No. 580 repeats the State Bar's concern with prejudicing the factfinder with irrelevant material.[3]

The foregoing legislative history shows that while the statute was designed to limit consideration of the defendant's record to pertinent issues, the question of subsequent disqualification was not considered. We therefore cannot view disqualification as part of the Legislature's intent.

Prior case law similarly contains no detailed discussion of the question of disqualification.

In *People* v. *Madison* (1969) 3 Cal.App.3d 984 [84 Cal.Rptr. 71], Division Three of this court found no prejudicial error in the inclusion in the defendant's court file of the summary report prepared for own recognizance release. The opinion reasoned that the report only existed because the defendant had requested such a release, there was no showing the trial court had read the report before considering guilt, and section 1204.5 had not been enacted at the time of the trial. In a footnote, *Madison* quoted section 1204.5 and stated: "In view of this provision it would appear to be normally improper now to have this type of information in the case file when it is

---

[3]"Concerning the written reports about the offense with which the accused is charged, the State Bar contends that this arrest report, prepared by the investigating officer is nothing more than a written statement of the officer's version of the facts and should not be before the judge (without proper introduction into evidence) anymore than should a written statement of the accused as to his version of the facts. It is contended that this deprives the accused of his right to confront and cross-examine a witness against him, denying him due process since he is unable to challenge every item of evidence and information that is offered or considered concerning his guilt or innocence.

"With respect to past arrest records and conviction records, the State Bar contends that this has no bearing upon the innocence or guilt of the defendant of the crime charged and yet this *can* be prejudicial to him, especially when the defendant has waived a jury trial and the trial court is the trier of fact. The State Bar contends that, in the absence of special circumstances, there is neither need nor justification for this information to be before the trial courts, without having first been properly introduced into evidence." (Italics in original.)

placed before the trial judge." (*Id.*, at p. 987, fn. 2.) That statement again does not reach the question of disqualification of a judge who previously properly reviewed that information.

Dictum in a footnote in *In re Walters* (1975) 15 Cal.3d 738 [126 Cal.Rptr. 239, 543 P.2d 607], is the only existing law regarding disqualification under section 1204.5. *Walters* held that an arrestee who is held for trial on a misdemeanor charge is entitled upon request to a judicial determination of probable cause (*id.*, at pp. 742-743). That holding was based upon *Gerstein* v. *Pugh* (1975) 420 U.S. 103, 114 [43 L.Ed.2d 54, 65 95 S.Ct. 854], in which the United States Supreme Court held that a judicial determination of probable cause is a constitutional prerequisite to an extended postarrest restraint of liberty.

In discussing the required procedures for a probable cause hearing, Chief Justice Wright explained in *Walters* that the judge could utilize a sworn complaint which incorporates by reference other factual materials like a police report. (15 Cal.3d at pp. 751-752.) In a footnote, the opinion quoted section 1204.5, and stated: "The probable cause determination required under *Gerstein* is in the nature of a 'law and motion' matter within the meaning of section 1204.5. Therefore, the judge who reads the arrest report is not disqualified from further participation in the criminal proceedings involving the particular defendant." (*Id.*, at p. 752, fn. 7.) That statement, although dictum, shows that our Supreme Court read the language of section 1204.5 to mean that there is no disqualification where such review is made pursuant to one of the exceptions listed in the statute. We abide by that reading of the statute, in the absence of any legislative history to the contrary.

Real party in interest district attorney argues that since section 1204.5 refers to a "judge of any court" rather than to a magistrate, it is inapplicable to a magistrate at an arraignment hearing. A magistrate has the limited functions of issuing arrest warrants, fixing and granting bail to arrestees, conducting preliminary examinations of defendants charged with felonies, and conducting peace bond proceedings. (Witkin, Cal. Criminal Procedure (1963) Introduction, § 16, pp. 18-19.) It is true that section 1204.5 does not mention magistrates. In contrast, section 1275 lists factors "the judge or magistrate" must consider in fixing bail, and section 1280b requires "the judge or magistrate" to file with the clerk all affidavits for the justification of bail. We are, however, convinced from the legislative history of section 1204.5 that the section is intended for any proceedings at which the bail issue might arise, and therefore applies both to proceedings before judges and magistrates.

The state public defender directs us to *In re Gladys R.* (1970) 1 Cal.3d 855, 859-862 [83 Cal.Rptr. 671, 464 P.2d 127]. *Gladys R.* held that a juvenile court committed reversible error when it read the social report on a minor prior to the jurisdictional hearing where the court decided whether the minor should be made a ward of the court. That holding was based upon the language of Welfare and Institutions Code sections 701, 702, and 706, which showed that the Legislature intended that the juvenile court should first determine whether the facts supported a declaration of wardship and then consider the social report in deciding the appropriate disposition of the ward. We recognize that the statutes involved in *Gladys R.* are concerned with the same problem as the statute involved here: avoiding prejudicing the factfinder with irrelevant information. The difference, however, is that the sections involved in *Gladys R.* do not contain any exceptions like those in section 1204.5 which permit review of a defendant's record prior to a determination of guilt. Therefore, nothing in *Gladys R.* goes to the question of disqualification with which we are faced.

Our conclusion that there is no automatic disqualification is further strengthened by the fact a defendant may make an application for bail or for a reduction of bail subsequent to the arraignment. (§§ 1273, 1289; Witkin, Cal. Criminal Procedure, *op. cit. supra,* Proceedings Before Trial, §§ 149, 156, pp. 142, 149.) When such a request is made, a defendant is making a tactical choice to allow the judge to review his prior record, as permitted by section 1204.5. It would be incongruous to find that every judge who rules on such an application is automatically disqualified from further sitting on the case.

We, therefore, conclude that, while it is a better practice to avoid possible prejudice by utilizing a different judge for the arraignment than for the preliminary hearing, a judge who properly reviews a defendant's record pursuant to one of section 1204.5's exceptions is not thereafter disqualified from the case.

### III

There remains the question whether Judge Seelicke was acting pursuant to one of section 1204.5's exceptions when he reviewed petitioner's record at the arraignment.

Section 1204.5 permits consideration of a defendant's record pursuant to "any application for an order fixing or changing bail. . . ." Petitioner argues that there was no such application here, as the judge simply asked counsel if he wanted to be heard, counsel submitted the issue, and the judge set bail.

■ Despite the absence of a formal bail application, we construe the proceedings as the equivalent of an application for such an order, for purposes of section 1204.5's exception.

Our conclusion is based partly on the fact the statute was designed to limit consideration of a defendant's record to pertinent situations, such as bail. Whether or not a formal application for bail has been made, a defendant's record is obviously relevant whenever bail is set. Indeed, both the state Constitution and the Penal Code require that "[i]n fixing the amount of bail, the court shall take into consideration . . . the previous criminal record of the defendant. . . ." (Cal. Const., art. I, § 12; § 1275; see *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 867, fn. 3 [132 Cal.Rptr. 464, 553 P.2d 624].)

We are further influenced by the fact that, whether or not an application for bail was made, the court had a duty under section 1269b, subdivision (b), to fix bail at petitioner's first appearance before it. That section provides: "If a defendant has appeared before a judge of the court on the charge contained in the complaint, indictment, or information the bail shall be in the amount fixed by such judge at the time of such appearance; if no such appearance has been made, the bail shall be in the amount fixed in the warrant of arrest or, if no warrant of arrest has been issued, the amount of bail shall be pursuant to the uniform countywide schedule of bail. . . ."

Under section 1269c, a peace officer may apply to have bail set in an amount lower than specified in the bail schedule; a defendant may apply "either personally or through his attorney, friend, or member of family" to have bail set in a lower amount; and a magistrate may "set such bail on such terms and conditions as he, in his discretion, deems appropriate. . . ." However, section 1269b's duty to set bail is obviously not conditioned upon such an application by a peace officer or a defendant under section 1269c. Since the magistrate here was required to set bail, and to review petitioner's record in doing so, he did not commit error.

## IV

The final issue raised by the record is the particular ground which was used in denying petitioner's section 995 motion. As indicated, the section 995 judge ruled that although section 1204.5 had been violated, the error was not reachable by a section 995 motion because the preliminary hearing evidence showed that there was probable cause for petitioner's commitment.

Section 995, subdivision (a) lists two separate, independent grounds for setting aside an information: "(2)(A) That before the filing thereof the

defendant had not been legally committed by a magistrate. [¶] (2)(B) That the defendant had been committed without reasonable or probable cause."

■ Petitioner's section 1204.5 argument went to the first ground, an illegal commitment. That ground applies where the defendant has been denied a substantial right. (*Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 874-875 [59 Cal.Rptr. 440, 428 P.2d 304], and cases cited therein.) If the commitment was illegal under that ground, the information would have to be set aside, regardless of whether there was probable cause for the commitment under the second ground of section 995. The judge therefore erred in ruling that petitioner's argument could not be reached by way of a section 995 motion. Since we have concluded, however, that there was in fact no violation of section 1204.5, the section 995 motion was properly denied.

■ Finally, we note that, due to the nature of the charges here, there can have been no possible prejudice to petitioner from the fact that the preliminary hearing judge had reviewed his record five months earlier. The charges themselves included allegations that petitioner was on parole at the time of the charged crimes and had previously been imprisoned as an ex-felon in possession of a firearm.

The petition for writ of prohibition is denied.

McClosky, J., and Arguelles, J., concurred.

A petition for a rehearing was denied October 21, 1986, and petitioner's application for review by the Supreme Court was denied December 23, 1986. Bird, C. J., Mosk, J., and Reynoso, J., were of the opinion that the application should be granted.