[No. S025119. Dec. 3, 1992.]

CHARLES C. NG, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Jeff Brown, Public Defender, under appointment by the Supreme Court, Michael N. Burt, Deputy Public Defender, and Peter G. Keane for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Dane R. Gillette, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**ARABIAN, J.**—Defendant, being prosecuted on felony charges in one county, seeks to be transported to another county for arraignment on unrelated felony charges. We are asked to decide whether he must be arraigned in the second county during the pendency of the first proceeding. We hold that the defendant need not be arraigned in the second county until the criminal proceedings in the first county have concluded.

## I. FACTS

In 1985 and 1986, two no-bail arrest warrants were issued in San Francisco Municipal Court on complaints charging defendant with murder, attempted murder, and being an accessory to another murder. For some period prior to and during 1991, defendant was incarcerated in Canada on unrelated charges. On September 26, 1991, he was extradited to California because of other unrelated capital charges in Calaveras County and because of some or all of the San Francisco charges. Pursuant to an order of the Calaveras County Superior Court, he was placed into custody at Folsom Prison. The next day, September 27, defendant was arraigned in the Calaveras County Justice Court on the capital charges, including 11 counts of first degree murder. Those charges are pending.

Since October 1991, defendant has actively sought to be transported to San Francisco for arraignment on the charges in that jurisdiction. After his attempts to obtain relief in the municipal and superior courts of San Francisco failed, he filed a petition for a writ of mandate/prohibition in the Court of Appeal asking the court to order his transportation to, and arraignment in, San Francisco. The Court of Appeal requested informal opposition from the Attorney General, and advised the parties that it might issue a peremptory

writ in the first instance. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893] (*Palma*).)

After receiving opposition, on February 4, 1992, the Court of Appeal filed an opinion ordering the issuance of a peremptory writ of mandate directing the San Francisco Superior Court to direct the municipal court to "arrange forthwith for the arraignment of [defendant] on the complaints filed against him in that court." The opinion also stated, "To facilitate the relief requested, this order is final forthwith. (Cal. Rules of Court, rule 24(d).)" Two days later, purporting to act pursuant to the "peremptory writ of mandate" issued by the Court of Appeal, the San Francisco Superior Court issued its own peremptory writ of mandate commanding the municipal court to arrange for defendant's arraignment "forthwith." The municipal court scheduled the arraignment for February 13; the warden of Folsom Prison was ordered to deliver defendant for the arraignment on that date.

On February 11, 1992, we stayed the orders, and on March 19, 1992, granted the Attorney General's petition for review.

## II. DISCUSSION

### A. *Procedural Matters*

Substantial confusion followed the filing of the Court of Appeal opinion ordering the issuance of a peremptory writ of mandate. As noted, the opinion, citing California Rules of Court, rule 24(d) (all rule citations are to these rules), stated that the "order is final forthwith." What the court undoubtedly meant to say, and should have said more clearly, is that the order is final forthwith "as to that court." (Rule 24(d).)

As we explained in *Palma, supra,* 36 Cal.3d at pages 180-181, the rule "now permits the Court of Appeal to direct also that its decision granting the peremptory writ shall become final 'as to that court within a stated period less than 30 days or that it shall be final as to that court immediately if early finality is necessary to prevent mootness or to prevent frustration of the relief granted.' In any event, *it is only when the decision becomes final as to both the Court of Appeal and this court that the peremptory writ actually issues.*" (Italics in original, quoting former rule 24(c) (now rule 24(d)), fn. omitted.) The Court of Appeal decision in this case would not become final *as to this court* until at least 30 days after it became final as to the Court of Appeal, that is, 30 days after it was filed. (Rule 28; see *Palma, supra,* 36 Cal.3d at p. 183, fn. 11.)

Although the Court of Appeal opinion was not final, and the peremptory writ had thus not issued, the opinion was immediately presented to the San

Francisco Superior Court. That court mistook the opinion for the "peremptory writ of mandate" itself. It issued its own peremptory writ directed to the municipal court. The latter court then ordered defendant arraigned a mere nine days after the Court of Appeal opinion was filed. This unduly hasty action necessitated an emergency stay by this court to preserve real party in interest's right to petition for review.

We reiterate what we explained in *Palma, supra.* The opinion of February 4, 1992, was not the writ itself, and it had no effect until it became final as to this court as well as the Court of Appeal. ■ "The . . . distinction between the judgment or decision directing that the writ issue, and the writ itself, applies when the peremptory writ is issued in the first instance. . . . [A] judgment or order directing that the writ issue must be entered by the court before the writ may be issued by an appellate court. [Citations.] That judgment or order is an appealable judgment if made by a superior court [citation] or is a decision subject to a petition for hearing [now review] in this court if made by a Court of Appeal. (Rule 28.) A Court of Appeal lacks authority either to issue a peremptory writ without prior entry of an order directing its issuance or to make such an order final forthwith, thereby to permit the immediate issuance of the writ itself without opportunity for review of the order by this court." (*Palma, supra,* 36 Cal.3d at pp. 181-182, fn. omitted.) The writ itself may not be issued "before the judgment or order directing that it issue has been filed and has become final." (*Id.* at p. 181, fn. 9.)

■ The superior court thus erred in treating the opinion as the writ, and acting upon it immediately. Henceforth, any Court of Appeal opinion accelerating the date of finality under rule 24(d) should make clear that the finality referred to is only as to *that court,* and not for all purposes. Likewise, the party to whom the writ will be directed—the superior court in this case—should not mistake the opinion for the writ itself. It should await issuance of the *writ* before acting upon it in order to preserve further available appellate proceedings.[1]

Although our plenary review of the merits of this case renders moot the procedure followed in the Court of Appeal, we also question the propriety of

---

[1]We note that the rules provide a procedure for expedited finality when there is a need for prompt action. Rule 25(b) states: "For good cause shown, or on stipulation of the parties, the Supreme Court may direct the immediate issuance of a remittitur. The Court of Appeal may direct the immediate issuance of a remittitur on stipulation of the parties." Since a remittitur issues only "after the final determination" of a cause such as this (rule 25(a)), rule 25(b) means, in effect, that upon stipulation, either the Court of Appeal or this court may order immediate finality for all purposes; absent a stipulation, *this court* may order immediate finality for good cause shown. Therefore, although the Court of Appeal lacks authority (absent stipulation) to permit the immediate issuance of the writ without opportunity for review by this court (see *Palma, supra,* 36 Cal.3d at p. 182), this court has such authority when there is good cause.

using the accelerated procedures established in *Palma, supra,* 36 Cal.3d 171. In *Palma,* we permitted the issuance of a peremptory writ in the first instance, with procedural safeguards which were followed here. But we also deemed the procedure a "rarity." (*Id.* at p. 179; see also *Bay Development Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1035 [269 Cal.Rptr. 720, 791 P.2d 290] (conc. opn. of Lucas C. J.).) We stress that the accelerated *Palma* procedure is the exception; it should not become routine. Generally, that procedure should be adopted only when petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue—for example, when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts—or when there is an unusual urgency requiring acceleration of the normal process. If there is no compelling temporal urgency, and if the law and facts mandating the relief sought are not entirely clear, the normal writ procedure, including issuance of an alternative writ (see *Palma, supra,* at pp. 177-178) should be followed.

In this case, defendant presented the Court of Appeal with a novel contention. Although the relevant facts are generally undisputed, any legal entitlement to immediate multiple arraignments was far from clear. Defendant had been incarcerated in Canada for years, much of the time resisting extradition to California. There was no apparent need for the sudden rush to judgment when he finally was extradited. We thus doubt that the rare procedure of issuing a peremptory writ in the first instance was appropriate. We need not decide the point definitively, however, for we now turn to our own consideration of the merits of defendant's petition.

## B. *The Merits*

■ In ordering that defendant be arraigned in San Francisco, the Court of Appeal relied primarily on California Constitution, article I, section 14, which provides in pertinent part: "A person charged with a felony by complaint subscribed under penalty of perjury and on file in a court in the county where the felony is triable shall be taken without unnecessary delay before a magistrate of that court."[2] The court also cited language by this court that "The right to a prompt arraignment is ' "a fundamental right of the arrested person" ' . . . ." (*People* v. *Thompson* (1980) 27 Cal.3d 303, 329 [165 Cal.Rptr. 289, 611 P.2d 883], quoting *People* v. *Powell* (1967) 67 Cal.2d 32, 59 [59 Cal.Rptr. 817, 429 P.2d 137].)

---

[2]Various statutory provisions address this mandate. Penal Code section 825 provides in pertinent part that "the defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his or her arrest, excluding Sundays and holidays . . . ." Penal Code section 859 provides in pertinent part that the defendant "shall, without unnecessary delay, be taken before a magistrate of the court in which the complaint is on file." (See also Pen. Code, §§ 821, 976.)

The court held that the defendant must be arraigned without unnecessary delay in every county in which a complaint has been filed against the defendant, not just the county currently prosecuting him. If one count of murder had been filed in each of eleven counties, instead of eleven counts in one county, the court apparently would have required defendant to be shuttled from county to county until he was arraigned in each one. Beyond that, defendant apparently intends to seek much more. In his brief on the merits, he candidly informs us that he wants "the noncapital case [to] go first during a necessarily lengthy period of pretrial preparation of the capital case." The Court of Appeal left for future litigation "contentions of good cause to delay further proceedings" in San Francisco.

Here, defendant has been arraigned on the Calaveras County charges. He does not deny that that arraignment was prompt, and that those charges alone justify his continuing incarceration pending trial. The issue is thus squarely presented: Do California Constitution, article I, section 14, and the related statutory provisions, require prompt *multiple* arraignments, one in each county in which a felony complaint is on file?

For the reasons that follow, we hold that, assuming the charges in other counties play no role in defendant's custody status,[3] prompt arraignment in the first county that actively prosecutes the charges, followed by arraignment in other counties upon commencement of actual prosecution of the charges in those counties, is sufficient. Prosecution in the first county may proceed to its conclusion without interference by the need to transport the defendant to other counties in which he is charged by complaint. As we explain, a distinct statutory provision specifically addresses the situation of charges in more than one county, and reconciles the need to prosecute one case at a time with the legitimate, and sometimes conflicting, interest of the defendant for a reasonably prompt resolution of all outstanding criminal charges.

Defendant does not cite, and we have not found, any case holding that an arraignment is required in another county while a prosecution is pending in a first county. Defendant, and the Court of Appeal, rely solely on

---

[3]There is no doubt that the capital charges in Calaveras County alone justify defendant's continuing incarceration. The San Francisco charges play no role in his custody status. As discussed in the text, arraignment is an important safeguard against improper continuing incarceration. We thus note that if a defendant is entitled to release, on bail or otherwise, in the first county, and another county seeks to keep him in custody on charges in that county, the defendant would undoubtedly have the right to obtain a prompt judicial determination of the propriety of the continuing incarceration. (See, e.g., Pen. Code, § 976.) Since those are not the facts here, we do not explore the question further except to stress that our holding applies only when charges from outside counties play no role in defendant's incarceration.

cases involving the initial arraignment following arrest, such as *People* v. *Thompson*, *supra*, 27 Cal.3d 303. While we agree that prompt arraignment following arrest is a fundamental right, defendant was promptly arraigned in Calaveras County. The question, upon which the cases are silent, is whether there is a right to prompt multiple arraignments.

To answer this question, we first examine the underlying rationale for requiring prompt arraignment. ■ "The principal purposes of the requirement of prompt arraignment are to prevent secret police interrogation, to place the issue of probable cause for the arrest before a judicial officer, to provide the defendant with full advice as to his rights and an opportunity to have counsel appointed, and to enable him to apply for bail or for habeas corpus when necessary." (*People* v. *Powell*, *supra*, 67 Cal.2d at p. 60; accord, *Youngblood* v. *Gates* (1988) 200 Cal.App.3d 1302, 1311 [246 Cal.Rptr. 775].) The United States Supreme Court has explained that " 'The purpose of this impressively pervasive requirement [requiring arrested persons to be promptly taken before a committing authority] of criminal procedure is plain. A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. . . . Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary.' " (*McNabb* v. *United States* (1943) 318 U.S. 332, 343 [87 L.Ed. 819, 825-826, 63 S.Ct. 608], as quoted in *Youngblood* v. *Gates*, *supra*, 200 Cal.App.3d at p. 1311; see also *People* v. *Pettingill* (1978) 21 Cal.3d 231, 242 [145 Cal.Rptr. 861, 578 P.2d 108] [discussing the dangers of an arrestee being held "incommunicado"].)

■ As defendant argues, other purposes of the arraignment include informing the defendant of the charge and providing an opportunity to enter a plea or to move to set aside the accusatory pleading. (75 Ops.Cal.Atty.Gen. 51, 54 (1992), and cases cited therein.) Each of these purposes is served by the combination of prompt arraignment in the first county followed by arraignment in the other counties when the charges there are actively prosecuted.

To the extent the purpose of arraignment is for a court to consider defendant's custody status, either directly by allowing the setting of bail, or indirectly as a precursor to other proceedings such as the preliminary hearing, arraignment must be prompt, but there is no need for multiple arraignments. The need to inquire into custody status, and the need for arraignment as to the charges being actively prosecuted, have been served by the arraignment in Calaveras County. Defendant has already been brought

before a neutral judicial officer, he has been informed of the charges that are currently being prosecuted, he is not being held bereft of counsel or incommunicado.

Other purposes—informing defendant of the specific charges being prosecuted, advice of rights, appointment of counsel,[4] allowing defendant to enter a plea or move to set aside the accusatory pleading—do not require *immediate* arraignment in each county, but will be served by arraignment in San Francisco when those charges are actively prosecuted in that county.

Custody has been a paramount concern in cases discussing the need for prompt arraignment. (See *County of Riverside* v. *McLaughlin* (1991) 500 U.S. __ [114 L.Ed.2d 49, 111 S.Ct. 1661] [stressing the need for a prompt judicial determination of the propriety of prolonged detention].) For example, the arraignment requirement of Penal Code section 825 has been interpreted as not applying when a parole hold on other matters has been placed upon the defendant. (*O'Neal* v. *Superior Court* (1986) 185 Cal.App.3d 1086, 1090 [230 Cal.Rptr. 257]; *People* v. *Gordon* (1978) 84 Cal.App.3d 913, 923 [149 Cal.Rptr. 91].) Penal Code section 859b grants to a defendant "in custody" the right to a preliminary hearing within 10 court days. That section, which has been described as "in pari materia" with Penal Code section 859, has been interpreted as applying only to persons in custody solely by reason of the charges which are the subject of the preliminary hearing. (*People* v. *Williams* (1987) 194 Cal.App.3d 124, 131 [239 Cal.Rptr. 375]; see also *Blake* v. *Superior Court* (1980) 108 Cal.App.3d 244, 247-248 [166 Cal.Rptr. 470].) While these cases do not directly decide the instant question, they suggest that a defendant in custody for charges in one county need not be immediately arraigned in other counties.

Although not directly on point, a number of cases have recognized the practical difficulties of attempting simultaneous multiple prosecutions, and the consequent propriety of trying one case at a time. In *People* v. *Gates* (1987) 43 Cal.3d 1168, 1192 [246 Cal.Rptr. 775], we held that "The pendency of another trial necessarily constitutes good cause" for delays in the second trial. (See also *People* v. *Bradford* (1976) 17 Cal.3d 8, 19 [130 Cal.Rptr. 129, 549 P.2d 1225] ["The preindictment delay in this case was justified by the necessity of awaiting termination of the federal and Los Angeles proceedings . . . ."]; *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433, 441, fn. 10 [121 Cal.Rptr. 457, 535 P.2d 321]; *Blake* v. *Superior Court*, *supra*, 108 Cal.App.3d at p. 252 ["It is not unreasonable to delay the Sacramento prosecution until the completion of the Los Angeles criminal

[4]For reasons which are unclear on the record, counsel has already been appointed to represent defendant on the San Francisco charges.

proceedings."]; *People* v. *Erb* (1965) 235 Cal.App.2d 650, 652 [45 Cal.Rptr. 503] ["The fact that the defendant was incarcerated in a jail in a county other than that in which the information had been filed was good cause for continuing his arraignment until he could be present."].)

In *People* v. *Watts* (1969) 274 Cal.App.2d 755 [79 Cal.Rptr. 409], defendant was not transported to Orange County on charges already on file in that county until completion of criminal proceedings in Los Angeles. In rejecting claims that defendant's speedy trial rights were violated, the court discussed at length the difficulties inherent in trying to conduct simultaneous prosecutions in two counties, even adjacent counties like Orange and Los Angeles. While not directly addressing the right of arraignment, the court stated that "neither the defendant's right to a speedy trial nor due process require any such method of procedure [simultaneous prosecutions]." (*Id.* at p. 762.) It concluded "that the orderly administration of justice and the defendant's right to a speedy trial are both preserved by the procedure followed in the case at bench, when there is no unreasonable delay between the successive trials in the several counties." (*Id.* at p. 763.)

Here, too, it is reasonable, and permissible, to await prosecution in one county before arraignment and prosecution in the next. Defendant, facing capital charges in Calaveras County, is an obvious security risk. The Court of Appeal has ordered defendant transported to San Francisco for arraignment. Defendant's stated intent to attempt to force trial in San Francisco before trial in Calaveras, combined with the Court of Appeal's reservation of the issue of future speedy trial claims in San Francisco, would likely require further shuttling back and forth between the two jurisdictions. The security risks and costs would be substantial. Defendant would also be able to thrust and parry one county against the other by sometimes asserting time limits and sometimes waiving them. It is difficult enough to bring a single complex case to trial. There is no need to prosecute two complex cases simultaneously.[5]

Defendant argues that he is entitled to have all charges pending eventually resolved. We agree. ■ "The constitutional right to a speedy trial protects every accused; a convict is not excepted." (*In re Mugica* (1968) 69 Cal.2d 516, 522-523 [72 Cal.Rptr. 645, 446 P.2d 525]; see also *Hayes* v. *Superior Court* (1971) 6 Cal.3d 216, 221 [98 Cal.Rptr. 449, 490 P.2d 1137]

[5]To the extent that defendant contends that the delay in prosecuting the San Francisco charges has prejudiced or will prejudice him in violation of his due process or speedy trial rights, we merely note that, except for the narrow issue decided here, nothing we say can or does affect defendant's ability to make any appropriate motions he may choose once the San Francisco charges are actively prosecuted.

[noting the difficulties confronting a prison inmate if other charges are not resolved]; *Smith* v. *Hooey* (1969) 393 U.S. 374 [21 L.Ed.2d 607, 89 S.Ct. 575] [holding that one state has, upon demand, a constitutional duty to try to bring an inmate of another state to trial on unresolved charges].) That right is not at issue here. We merely hold that a defendant may not force prosecution in one county while other charges are being prosecuted in another; we do not suggest that a defendant does not have a right to force the resolution of other charges upon *completion* of the first charges.

Defendant, claims, however, that if California Constitution, article I, section 14, and Penal Code section 859, are interpreted to apply only to defendants in custody by reason of the pending charges, he "would not even be entitled to a prompt arraignment in San Francisco upon completion of the Calaveras County proceedings, but must await the service of any resulting sentence in Calaveras County." We disagree. Although the arraignment provisions relied upon by defendant do not apply to charges in multiple counties, other provisions *do* apply to protect defendant's legitimate interests in having all outstanding charges resolved.

Penal Code section 1381 provides generally that an inmate incarcerated on one set of charges may demand to be tried or sentenced on "any other indictment, information, *complaint*, or any criminal proceeding wherein the defendant remains to be sentenced" that is pending in California. (Italics added.)[6] "The cases dealing with a California prisoner's or parolee's constitutional and statutory rights to a speedy trial on another felony charge have held that such rights are governed by section 1381 of the Penal Code. [Citations.] . . . The procedural requirements of section 1381 do not conflict with the constitutional guarantee of speedy trial [citation] or with the right to be taken before a magistrate without unnecessary delay." (*In re Mugica, supra*, 69 Cal.2d at p. 523.)

Thus, Penal Code section 1381 serves to protect defendant's interest in having any remaining charges resolved upon completion of the prosecution in the first county. The provisions for speedy arraignment do not require multiple arraignments during the pendency of the charges that were the subject of the first arraignment. This holding makes it unnecessary to consider defendant's remaining contentions.

---

[6]Penal Code section 1381.5 is the counterpart for inmates in federal custody in this state. Penal Code section 1389, the "Agreement on Detainers," is the counterpart for persons incarcerated outside the state. (See *People* v. *Watts, supra*, 274 Cal.App.2d at pp. 759-760.) We do not here discuss the details of these provisions, or whether they are constitutionally based, or how they may eventually apply to defendant; instead, we merely note that, in contrast to the arraignment provisions, they expressly address the problem of charges in multiple jurisdictions.

## III. CONCLUSION

The Court of Appeal erred in finding that defendant had a right to be arraigned in San Francisco while the capital charges in Calaveras County were pending. The judgment of the Court Appeal ordering the issuance of a peremptory writ of mandate is reversed, and the matter is remanded with instructions to deny defendant's petition for writ of mandate/prohibition.

Lucas, C. J., Panelli, J., Kennard, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I concur in the judgment.

In my view, petitioner is not entitled to the relief he seeks. To be sure, he has a right to a prompt arraignment in San Francisco under article I, section 14 of the California Constitution. But through his arraignment in Calaveras and the appointment of counsel in San Francisco, he has already received all the benefits that the right is intended to guarantee—its "principal purposes" being "to prevent secret police interrogation, to place the issue of probable cause for the arrest before a judicial officer, to provide the defendant with full advice as to his rights and an opportunity to have counsel appointed, and to enable him to apply for bail or for habeas corpus when necessary." (*People* v. *Powell* (1967) 67 Cal.2d 32, 60 [59 Cal.Rptr. 817, 429 P.2d 137] [decided under Cal. Const., art. I, former § 8, the relevantly similar predecessor of present § 14].)

With that said, I am of the view that the sequence of prosecution effectively determined here satisfies the ends of justice. The charges in Calaveras are considerably more serious and numerous than those in San Francisco. The latter consist of single counts of murder, attempted murder, and accessory after the fact to murder. The former include 11 counts of murder under 7 special circumstances. They are properly tried first.

Nevertheless, I would not deduce a "rule" from what has transpired here. It is doubtful that the sequence of prosecution should depend on which county succeeds in securing custody of the defendant. Often this fact is fortuitous. Never is it dispositive in and of itself. For example, if San Francisco authorities had arrested defendant, under a "rule" of mere priority they would have been permitted to try him first—despite the more serious and numerous charges in Calaveras. For an even more graphic illustration: if Amador authorities had arrested defendant for a single routine burglary, under this same "rule" they would have been allowed the first trial—despite the other, much more serious and numerous charges. Certainly, such results would not serve the interests of justice.

I hope that the Legislature will establish a mechanism whereby the sequence of prosecution among competing counties may appropriately be determined. It could perhaps authorize the Attorney General, as "the chief law officer of the State" (Cal. Const., art. V, § 13), to fix the order of multiple trials. I trust that a legislative response will be forthcoming.