Filed 7/31/13  Truck Ins. Exchange v. Super. Ct. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE, et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ALAMEDA COUNTY, <br><br> Respondent; <br><br> GOLDEN STATE DEVELOPERS, INC., et al., <br><br> Real Parties in Interest. | A137420 <br><br> (Alameda County Super. Ct. No. RG-06-291935, consolidated with RG-07-334847 & RG-10-509252) |

Petitioners Truck Insurance Exchange, Mid-Century Insurance Company, Farmers Insurance Exchange, and Farmers Group, Inc., seek a writ directing respondent court to vacate certain orders compelling responses to discovery propounded by real parties in interest Golden State Developers, Inc., Castro Valley Associates, LP, and Castro Valley, Inc. (hereafter collectively referred to as Golden State).  In the pending litigation in respondent court, petitioners objected to the requested discovery (production of documents and responses to deposition questions) on the ground that it sought disclosure of communications that contravened their attorney-client privilege (Evid. Code, § 954). [1]

---

[1] The California Evidence Code refers to this privilege as the "lawyer-client" privilege (Evid. Code, § 954), instead of "the more accurate denomination [of] 'attorney-client privilege.' "  (*Freedom Trust v. Chubb Group of Ins. Companies* (C.D. Cal. 1999) 38 F.

1

Respondent court found Golden State met its burden of demonstrating that petitioners' attorney-client privilege had been lost based on the crime-fraud exception codified in Evidence Code section 956.[2] For the reasons stated below, we conclude respondent court erred in concluding that Golden State had met its burden for applying the crime-fraud exception to the attorney-client privilege. Therefore, we will issue the requested writ and direct respondent court to vacate its orders and issue new and different orders sustaining petitioners' objections to discovery requests that contravene their attorney-client privilege.

FACTS[3]

### A.    *Background*

The underlying dispute arose after the development of single-family homes by Golden State, who acted as the general contractor for the project. Several homeowners sued Golden State, seeking damages for water penetration allegedly caused by construction defects. In March 2003, after Golden State had incurred approximately $370,000 in repair costs, it sued several of its subcontractors, which generated various cross-complaints between Golden State and other subcontractors and the parties' insurers. Ultimately, one of the homeowners, James Morrison, settled with a subcontractor for approximately $80,000; Morrison allegedly assigned his rights against Golden State to petitioner Mid-Century Insurance Company, the subcontractor's insurer.[4]

---

Supp.2d 1170, 1171, fn. 1.) Because the privilege is "commonly known as the attorney-client privilege" (*ibid*.), we use that nomenclature in this opinion.

[2] Evidence Code section 956 reads: "There is no privilege . . . if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

[3] We set forth only those facts necessary to resolve the issues raised in this proceeding. In the absence of any objection, we grant Golden State's request for judicial notice of the documents submitted in three volumes of exhibits, and have considered the documents to the extent they are relevant to our resolution of this petition.

[4] The related litigation between Golden State, the subcontractors, and the other homeowners also settled. Thus, all claims against Golden State and the subcontractors are now dismissed.

2

Subsequently, Mid-Century Insurance Company filed two actions to recover the costs it had incurred to settle the Morrison claim: *Farmers Insurance Group and James Morrison v. Golden State Developers, et al.* (hereafter "Farmers/Morrison action") and *Mid-Century Insurance Company v. Golden State Developers, et al.* (hereafter "Mid-Century action") (collectively hereafter also referred to as "the recovery actions"). In the Farmers/Morrison action, Golden State was dismissed as a defendant in January 2008. The complaint in the Mid-Century action was filed, but not served on Golden State. When Golden State discovered the filed Mid-Century action complaint, it successfully moved to dismiss that complaint against it.

### B. Current Litigation

During the construction defect litigation, Golden State sued one of its alleged insurers, petitioner Truck Insurance Exchange, for declaratory relief and to recover damages for various claims including breach of contract, bad faith, and misrepresentation. By the time of the filing of a fifth amended complaint, on March 26, 2010, Golden State added as defendants its alleged additional insurers, petitioners Mid-Century Insurance Company, Farmers Insurance Exchange, Farmers Group, Inc., and the insurers' counsel Gregory R. de la Peña, Keith L. Cooper, and de la Peña & MacDonald LLP, and an additional claim for malicious prosecution of the dismissed recovery actions.

Respondent court ordered the Golden State lawsuit to be tried in several phases, depending on what issues, if any, needed to be resolved after each phase of the trial. Phase I was to focus on certain questions of law and declaratory relief including whether particular Golden State claims were barred or released by prior settlement agreements and whether certain insurers owed any duty to defend or indemnity Golden State in the construction defect litigation. Phase II was to focus on Golden State's claims of breach of contract, bad faith, fraud, damages, defense fees and costs, and indemnity. Phase III was to focus on Golden State's claim of malicious prosecution, with the court specifically ordering that "[i]ssues regarding malicious prosecution and the elements of that cause of action will not be considered for Phase I." On September 5, 2012, after a bench trial, respondent court filed a statement of decision resolving the Phase I issues and adhering to

3

its pretrial ruling not to consider issues regarding malicious prosecution nor the elements of that cause of action.[5]

In preparing for the Phase II trial, Golden State sought the production of documents in Mid-Century's claim files. Mid-Century objected to the production of any documents that contravened the attorney-client privilege. After Golden State moved to compel discovery, respondent court appointed Judge Bonnie Sabraw (Retired judge of the Alameda County Superior Court) to serve as discovery referee to review Mid-Century's privilege logs. In pertinent part, the referee addressed "whether or not there were documents in the files that supported [Golden State's] allegations of the application of the crime-fraud exception" to the attorney-client privilege. After an in camera review of the files, the referee tentatively found that the production of privileged attorney-client information was not warranted. However, the referee did not address whether or not respondent court had "found, as a result of issues decided in Phase I, whether there is a basis for a finding of the necessary prima facie showing for [Golden State's] [application] of the crime[-]fraud exception to the attorney client privilege," and she requested "guidance on that issue as it [was] anticipated [Golden State] may attempt to propound questions related to the crime-fraud issue at upcoming depositions."

On September 14, 2012, in response to Golden State's objections to the referee's recommendations, and after consideration of the parties' oral and written arguments, respondent court found Golden State had "set forth a prima facie showing of fraud, at least on the part of Mid-Century Company, with respect to both the initiation and maintenance of the [recovery actions]."[6] The court noted that, although the referee had

---

[5] Respondent court's Phase I trial decision addressed only Golden State's claims against petitioners Truck Insurance, Mid-Century, and Farmers Insurance Exchange. The court deferred determination of the responsibility, if any, of Farmers Group, Inc.

[6] In support of its ruling, respondent court cited to two earlier orders denying motions seeking to dismiss the malicious prosecution cause of action against defendants Gregory R. de la Peña, Keith L. Cooper, and de la Peña & MacDonald LLP. The court, in those orders, found in essence that either Golden State had demonstrated a reasonable likelihood of success on its malicious prosecution claim or there were material issues of

4

found that no reviewed documents supported an application of the crime-fraud exception, she did so without the benefit of the court's finding that Golden State had made a prima facie showing of fraud. Consequently, the court remanded the matter to the referee for a reexamination of the documents "that refer to, discuss, mention, or otherwise relate specifically to the [recovery actions], which presumably would eliminate any documents authored after those cases were" terminated. As to the referee's request for guidance on the matter of questioning during depositions, the court directed that "lines of inquiry soliciting information regarding the [recovery a]ctions, including the decisions to initiate and maintain those actions, may be pursued, with [attorney-client privilege] objections to questions regarding [those actions] subject to being overruled pursuant to Evidence Code section 956." The court concluded by stating that "[t]he issuance of a final order . . . will await receipt and review of the [referee's] further recommendations upon remand." On remand, the referee made new recommendations after establishing the appropriate time-frame (October 1, 2006 through January 23, 2009) for which responsive documents would be required to be produced by Mid-Century. The referee found that "several hundred" otherwise privileged documents were discoverable based on the crime-fraud exception. Petitioners objected to the referee's recommendations, again arguing against the application of the crime-fraud exception.

On November 8, 2012, respondent court issued another "non-final" order addressing petitioners' objections. In so ruling, the court stated: "For purposes of determining whether the [crime-fraud exception] to the [attorney-client privilege] applies in the discovery context, it is not necessary to make an ultimate finding of fraudulent conduct. Rather, evidence from which inferences can be drawn to establish the fraud is a sufficient 'prima facie showing.' " The court again noted that its finding was based on the previous court orders addressing the malicious prosecution cause of action, "and, by inference, the evidence submitted by [Golden Gate] in opposition to those motions. . . . [¶] The court further notes that [petitioners'] arguments as to the extent of its duties to

_____

fact regarding each of the elements of the malicious prosecution cause of action (lack of probable cause, malice, and termination in Golden State's favor).

5

[Golden State] under the applicable insurance policies and endorsements, raised in an attempt to establish that the [recovery actions] were in no sense improper, are inconsistent with the findings of the court in the Phase I trial." The matter was remanded to the referee to determine whether any of petitioners' other objections to the production of the requested documents should be sustained. On remand, the referee made revised recommendations, identifying more than 260 documents to which the attorney-client privilege was claimed but fell within the temporal and subject-matter scope of respondent court's rulings on the crime-fraud exception. Petitioners objected, again arguing against the application of the crime-fraud exception.

Thereafter, respondent court issued two orders, both filed December 18, 2012, granting, in part, Golden State's motions to compel answers to certain deposition questions after overruling petitioners' objections based on the attorney-client privilege. On December 21, 2012, respondent court issued a final order directing the production of documents pursuant to the referee's latest recommendations after again rejecting petitioners' objections based on the attorney-client privilege. In so ruling, the court stated that petitioners' objections reflected "a misunderstanding of the scope and effect of the court's orders regarding the crime-fraud exception ("CFE") as it arises here in the discovery context. A finding that a prima facie showing of conduct implicating the CFE has been made does not equate to a finding of liability for such conduct. Rather, the limited effect of this finding is to cause the production of evidence that would otherwise properly be withheld as privileged. These discovery production orders have no direct effect in establishing any form of liability on the part of any party, nor are they determinative of whether any evidence produced thereunder will be admissible in connection with the adjudication of such issues of liability."

On December 27, 2012, petitioners filed this petition for writ of mandate and/or prohibition and requested an immediate stay of the discovery orders that were filed on December 18, 2012, and December 21, 2012. On January 3, 2013, we temporarily stayed the discovery orders, requested informal briefing, and gave notice, pursuant to *Palma v.*

6

*U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180, that, if appropriate, this court might issue a peremptory writ in the first instance.

## DISCUSSION

### I.     Writ Review and Relief Is Appropriate in This Case

It is well settled that interlocutory writ relief is "the only adequate remedy" where a superior court orders the production of information that "may be subject to a privilege, 'since once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure.' [Citation.]  The attorney-client privilege 'deserves a particularly high degree of protection in this regard since it is a legislatively created privilege protecting important public policy interests, particularly the confidential relationship of attorney and client and their freedom to discuss matters in confidence.' [Citations.]" (*Korea Data Systems Co. v. Superior Court* (1997) 51 Cal.App.4th 1513, 1516.)  Because the petition here alleges that, absent writ relief, privileged attorney-client communications will be disclosed and the privilege irretrievably lost, we will entertain the petition.

Golden State contends we should not reach the merits of this petition because (1) petitioners failed to provide an adequate record; (2) the petition is untimely; and (3) petitioners failed to pursue an adequate legal remedy in respondent court.  We conclude these procedural objections are unavailing.

Petitioners submitted seven volumes of exhibits, including all of the documents submitted to respondent court concerning its orders regarding the crime-fraud exception, as well as the court's statement of decision after the Phase I trial, and the only document incorporated by reference therein.   Golden State complains that petitioners failed to include the "second complaint" filed in the Mid-Century action, as well as Golden State's evidence submitted in opposition to defense motions seeking dismissal of the malicious prosecution cause of action, and "critical evidence admitted in the Phase [I] trial."  To the extent Golden State believed the additional documents were relevant, they submitted them to this court and we granted its request to take judicial notice and have considered

7

those documents to the extent they are relevant to our resolution of this petition.[7]  We therefore deem the record sufficient for informed appellate review.  (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1085.)

We also reject Golden State's argument that the petition was untimely because it was submitted approximately three months after the first court order ruling on the crime-fraud exception to the attorney-client privilege.  In that first order, the respondent court specifically stated that "[t]he issuance of a final order [giving] effect [to its rulings] will await receipt and review of the Discovery Referee's further recommendations upon remand."  The court's final orders on the matter did not issue until December 18, 2012 and December 21, 2012, and this petition was thereafter timely filed on December 27, 2012.

Lastly, we conclude petitioners adequately exhausted their legal remedy in respondent court before filing this petition for writ relief.  Golden State contends petitioners failed to adequately challenge the requested discovery because when the crime-fraud exception issue was first raised, petitioners "filed no written opposition," but relied only on the referee's tentative finding that there was no evidence to support the application of the exception.  However, the record indicates that petitioners relied not only on the referee's tentative finding in their favor, but also relied on—and respondent court expressly considered—petitioners' written argument against applying the crime-fraud exception as set forth in their "brief regarding privilege [log] documents filed with the Court on June 1st, 2012."

## II.  Respondent Court Erred in Ruling that the Crime-Fraud Exception to the Attorney-Client Privilege Applied in This Case

"We review discovery orders for an abuse of discretion.  [Citation.]  Under this standard, a trial court's ruling on a discovery motion 'will be overturned upon a prerogative writ if there is no substantial basis for the manner in which trial court discretion was exercised or if the trial court applied a patently improper standard of

---

[7] See footnote 3, *ante*.

decision.' [Citation.]" (*People ex. rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071.)

"Evidence Code section 956 codifies the common law rule that the privilege protecting confidential attorney-client communications is lost if the client seeks legal assistance to plan or perpetrate a crime or fraud. [Citation.] The crime-fraud exception expressly applies to communications ordinarily shielded by the attorney-client privilege. (Evid. Code, § 954.)" (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1249 (*BP Alaska Exploration*).) As explained by our Supreme Court, the crime-fraud exception is invoked " 'only when a client seeks or obtains legal assistance "to enable or aid" one to commit a crime or fraud. The quoted language clearly requires an intention on the part of the client to abuse the attorney-client relationship . . . .' [Citations.]" (*People v. Clark* (1990) 50 Cal.3d 583, 623 (*Clark*), quoting *Glade v. Superior Court* (1978) 76 Cal.App.3d 738, 746 (*Glade*), citing to *BP Alaska Exploration, supra,* 199 Cal.App.3d at p. 1249.) Concededly, "Evidence Code section 956 does not require a completed crime or fraud. It applies to attorney communications sought to enable the client to *plan to commit* a fraud, whether the fraud is successful or not. Moreover, we are not reviewing the merits of a fraud cause of action . . . but rather we are reviewing the merits of a *discovery* [*motion*] to determine if [Golden State] will have access to communications between [petitioners] and [their] attorneys to aid [Golden State] in proving its causes of action." (*BP Alaska Exploration, supra*, 199 Cal.App.3d at pp. 1262-1263.) Thus, "because section 956 applies where an attorney's services are sought to enable a party to plan to commit a fraud, the proponent of the exception need only . . . prove a false representation of a material fact, knowledge of its falsity, intent to deceive and the right to rely." (*BP Alaska Exploration, supra*, 199 Cal.App.3d at p. 1263.)

Golden State contends petitioners' prosecution of the recovery actions constituted "criminal deceit." We disagree. Standing alone, the prosecution of a lawsuit, malicious or not, is neither a crime nor deceit. (*Tur v. City of Los Angeles* (1996) 51 Cal.App.4th 897, 903; see also Civ. Code, § 1709 [defining deceit as "the willful [deception of]

another with intent to induce him to alter his position to his injury or risk].) Rather, a lawsuit is an adversarial proceeding in which a plaintiff's intent is to convince the trier of fact to adopt his position. Golden State, as an *adversary*, had no right to rely on any facts alleged in the recovery actions "without [making] an independent inquiry." (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332.) As the record shows, once that independent inquiry was made, the recovery actions were dismissed against Golden State. Thus, in the absence of any showing that Golden State was deceived by the filing of the recovery actions, it failed to meet its burden of demonstrating a prima facie showing of fraud sufficient to invoke the crime-fraud exception to the attorney-client privilege. (Cf. *BP Alaska Exploration, supra,* 199 Cal.App.3d at pp. 1264, 1268 [proponent of crime-fraud exception to attorney-client privilege demonstrated prima facie showing of fraud; proponent had right to rely on adversary's letter from which reasonable inferences could be drawn that the letter was an attempt to defraud and dissuade proponent from pursuing its claims].)

We are not persuaded that we should uphold the discovery orders based on Golden State's remaining arguments. We see nothing in the court's earlier orders addressing the elements of the malicious prosecution cause of action or the court's findings after the Phase I trial that demonstrates petitioners sought or obtained legal assistance to enable or aid in the commission of a crime or fraud. Golden State's citation to the ethical standards governing an attorney's conduct and its criticism of the recovery actions are not relevant as "it is the intent of the client upon which attention must be focused and not that of the lawyers." (*State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 645; see also *Clark, supra*, 50 Cal.3d at pp. 622-623.) Even *if* counsel misclassified the nature of the claim in the recovery actions, such a circumstance is not relevant without some evidence this alleged error was attributable to an intent to defraud by petitioners. (See *Glade, supra*, 76 Cal.App.3d at p. 746 [attorney's misuse of confidential information to defraud others does not implicate crime-fraud exception if client did not seek legal assistance to further this goal and was unaware of attorney's contemplated wrongdoing].)

10

In sum, we conclude respondent court erred in overruling petitioners' objections to the production of documents and responses to deposition questions that contravened their attorney-client privilege as Golden State failed to demonstrate that the crime-fraud exception applied in this case. [8]

## DISPOSITION

The accelerated *Palma* procedure (*Palma v. U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d 171) is appropriate here because petitioners' "entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue. . . ." (*Ng v. Superior Court* (1992) 4 Cal.4th 29, 35.)

Let a peremptory writ of mandate issue directing respondent court to vacate only those portions of its two December 18, 2012 orders "Re: Motion to Compel (Motion) Partial Grant," and its December 21, 2012 order "Re: Objections to Discovery Referee's Recommendations Dated November 19, 2012," which overruled petitioners' attorney-client privilege objections to deposition questions and the production of documents, and issue new and different orders sustaining petitioners' objections to the production of documents and responses to deposition questions that contravene their attorney-

---

[8] In light of our determination, we need not address petitioners' other arguments.

client privilege.  The January 3, 2013 stay issued by this court is dissolved.  Petitioners are entitled to their allowable costs.

_____
McGuiness, P. J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.