[No. D035689. Fourth Dist., Div. One. Aug. 29, 2000.]

THE PEOPLE ex rel. BILL LOCKYER, as Attorney General, etc.,
Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PAUL J. PFINGST, as District Attorney, etc., et al., Real Parties in
Interest.

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Adrianne S. Denault, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Luce, Forward, Hamilton & Scripps, Edward Patrick Swan, Jr., and Guillermo Cabrera for Real Parties in Interest.

**OPINION**

**HUFFMAN, J.**—This proceeding concerns the extent to which the attorney-client and work product privileges may be used by a public prosecutor who is the subject of an ongoing criminal investigation to prevent documents seized pursuant to validly issued and executed search warrants[1] from being reviewed by law enforcement. In this criminal investigation of real party in interest Deputy District Attorney (DDA) Peter J. Longanbach (Longanbach),[2] the People of the State of California, through the Office of the California Attorney General (AG), petition for a writ of mandate/prohibition after respondent Superior Court of San Diego County (the court) upheld Longanbach's privilege claims to certain documents seized pursuant to search warrants issued for specified areas of the DA's office and Longanbach's residence. After conducting in camera reviews under Penal Code[3] section 1524, subdivision (c) to ascertain the validity of the claimed privileges for the sealed material taken from each location, the court ordered the privileged documents returned to Longanbach and reappointed a special master to review the contents of computer backup tapes in the DA's possession.

---

[1] There is no challenge in the current proceeding to the validity of the search warrant or the manner of its execution. For purposes of the issues before us we assume, without deciding, that both were proper.

[2] Longanbach resigned his employment with the Office of the San Diego County District Attorney (DA), real party in interest, after execution of the search warrants in this investigation.

[3] All statutory references are to the Penal Code unless otherwise specified.

We stayed enforcement of the court's orders in this proceeding, issued an order to show cause (OSC) and now grant the petition in part and deny it in part.

## PROCEDURAL AND FACTUAL BACKGROUND

Longanbach is being investigated for possible crimes, including misappropriation of government property (§ 424) and perjury (§ 118), arising out of his employment with the DA's office. It is essentially alleged that he used the resources of the DA's office to further his own personal business interests. As part of the investigation, on February 7, 2000, the California Department of Justice (Justice) obtained search warrants for specified areas of the DA's office, including the office Longanbach occupied as a DDA, Longanbach's home and cars, and for another attorney's office. At the same time, the court signed an "Order for Special Masters for Execution of Search Warrants" pursuant to section 1524, subdivision (c), assigning three special masters, one for each search location.

On February 8, 2000, agents from Justice executed the search warrants at the DA's office and at Longanbach's residence, accompanied by the respective special master assigned for each place. Longanbach was at his office within the DA's office when the agents arrived to search. His attorney, Lynne Lasry, arrived shortly thereafter and remained at the DA's office for the duration of the search, while Longanbach went to his residence with another of his attorneys, Edward Patrick Swan.

During the search of the office Longanbach occupied at the DA's office, claims of privilege were made to various items, identified as Nos. 3100 to 3103, which were then sealed by the special master.[4] With the assistance of DDA Patricia O'Mara and/or DDA Paul Morley, the agents seized Longanbach's personnel file and other materials on another floor of the DA's office, including item Nos. 3001 to 3039,[5] which were then claimed as privileged by Lasry, taken into possession by the special master and also sealed. Meanwhile, item Nos. 1900 to 1904 and 1906 to 1926, seized at Longanbach's home, were claimed as privileged and sealed by the special master there.

---

[4]These items included Longanbach's briefcase (No. 3103) which contained, among other things, some materials related to the *Genzler* case, which we reversed in an unpublished opinion (*People v. Genzler* (Oct. 20, 1998, D028150)). Longanbach was the prosecuting attorney for the first *Genzler* trial and is separately being investigated for alleged misconduct with regard to that trial; the AG is prosecuting the second trial. Genzler's attorney's attempt below to file a motion for discovery of the items seized concerning the *Genzler* case was denied by the court. In the proceedings before this court, we have denied Genzler's request to file a brief in intervention.

[5]DDA Morley later delivered to the special master CD-ROM's (compact disc—read only memory) from the DA's office described as "PLONGA" and "CLUMLE," identified as item Nos. 3104 and 3105, respectively.

On February 14, 2000, the special masters turned over to the court all of the sealed documents and items seized pursuant to the search warrants served on the DA's office and Longanbach's home. DDA Morley advised the court the DA's office was not asserting any rights or privileges at that time regarding the materials seized, and Morley and DDA O'Mara explained that there were problems with obtaining data from the computer software and hardware that were seized. The court continued the matter several days to allow Longanbach to provide specific written claims of privilege, allowing him to reserve any section 1538.5 matters until a later time.

On February 17, 2000, Longanbach filed his written claims of privilege to the sealed items. In addition to asserting the attorney-client privilege as the "client" for documents "prepared for or received from attorneys James P. O'Neill (Nos. 1900-1903 and 1910-1917), Lynne Lasry (Nos. 1904, 1906-1907, 1925-1926, 3101 and 3103) and Robert C. Rice (Nos. 1908-1909 and 1918-1923)," Longanbach claimed work product protection for writings he authored relating to legal issues (Nos. 1904, 1910-1912, 1914, 1916-1917, 1922-1923, and 1925-1926). He also claimed a compelled statement privilege applied to documents provided to the DA's office during an internal confidential personnel investigation of him, including a response to a demand for information by Assistant District Attorney Greg Thompson, and asserted a blanket privilege claim to item Nos. 3001 to 3039 taken from the DA's office.

At a hearing the same day, after some discussion as to whether Longanbach had any standing to claim privileges with regard to the DA's CD-ROM's, hard drive, and materials printed from them, the court again continued the matter, setting a briefing schedule on the issues of standing and claims of privilege as to the seized material. Before the next contested hearing, the court conducted ex parte in camera hearings on March 22 and April 17, 2000, with Longanbach and his attorneys,[6] and thereafter sealed the transcripts of those hearings held to review Longanbach's specific assertions of privilege and/or objections to the items seized, including printouts of two of the DA's CD-ROM's, identified as item Nos. 3105-C and 3104-C.

At the April 21, 2000 hearing, problems with the computer and disc printouts were again noted, and the court requested that DDA Morley cooperate to provide an accurate and complete printout of additional computer materials. The court also commented that the computer material reviewed in camera had contained material sensitive to the internal workings of the DA's office and permitted Morley to claim a limited privacy privilege for the DA's office as to such matters.

---

[6]Attorney Swan attended both in camera hearings and Lasry attended the first.

On May 5, 2000, the court held a hearing at DDA Morley's request to set up procedures for review of the DA's backup tapes to determine what information was responsive to the February 2000 search warrants. Morley represented that the AG and DA had worked out a procedure to review the computer directories of the five people targeted in the investigation, but that Longanbach's attorney objected, claiming attorney-client and work product privileges to the computer materials. After heated discussion as to the propriety of a former public servant claiming such privileges, in an abundance of caution the court reappointed the special master who had been appointed in connection with the execution of the search warrant at the DA's office, to obtain copies of the backup tapes and present them to the court for in camera review under section 1524. The court also stated it would soon issue its ruling on the claims of privilege made so far and allow the parties 14 days in which to seek writ review before the privileged documents were returned to Longanbach or the DA and the nonprivileged materials turned over to the AG. The court's formal order reappointing the special master was filed May 8, 2000, and its order ruling on the objections and claims of privilege made thus far was filed May 12, 2000.

The AG filed the instant petition for mandate and prohibition on May 25, 2000. In addition to granting a stay of enforcement of the court's May 8 and 12, 2000 orders, we directed the court to provide us with the sealed reporters' transcripts from the ex parte in camera review hearings held on March 22 and April 17, 2000, and all documents seized pursuant to the search warrants executed on February 8, 2000, for which Longanbach claims privilege. After reviewing the matter,[7] we issued an OSC, requesting the parties specifically to address, among other things, the following two questions: "(1) Where the special master procedures under Penal code section 1524, subdivision (c) have been erroneously or inadvertently employed for issuance of a search warrant 'for any documentary evidence in the possession or under the control of any person, who is a lawyer[,]' who is 'suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested[,]' may the lawyer continue to receive the benefits of such statutory protection when the lawyer in essence is the purported 'client' for purposes of any in camera hearing on the applicability of the attorney-client privilege regarding files seized from his home and office[?] (See *PSC Geothermal Services Co. v. Superior Court* (1994) 25 Cal.App.4th 1697, 1702, fn. 4 [31 Cal.Rptr.2d 213]); and (2)

---

[7]On June 2, 2000, the court transmitted the requested documents and materials, and also enclosed a copy of the May 12, 2000 order. The court noted it was also enclosing a copy of a May 26, 2000 order "clarifying copies to all parties without enclosures and making clerical changes to May 12, 2000 order." Such clarifying order, however, was not included with the other documents transmitted to this court.

[W]here evidence has been obtained pursuant to a properly executed search warrant served on the 'client' in a possible attorney-client relationship, do the statutory attorney-client privilege or attorney work product protections apply to prevent the seizing authorities from initially reviewing the materials constitutionally taken? (See *Andresen v. Maryland* (1976) 427 U.S. 463 [96 S.Ct. 2737, 49 L.Ed.2d 627]; see also *Zurcher v. Stanford Daily* (1978) 436 U.S. 547 [98 S.Ct. 1970, 56 L.Ed.2d 525].)"

Supplemental briefs responsive to the above questions have been received and oral argument has been waived. The AG's petition essentially requests this court to grant a writ of mandate and prohibition ordering the superior court "to surrender all of the documents seized pursuant to the search warrants to the [AG] and void the May 8, 2000 Order appointing a special master to review the contents of the [DA's] computer back-up tapes and for any and all further orders in the interest of justice."

DISCUSSION

■ The AG contends it is entitled to writ relief because the court abused its discretion by upholding Longanbach's claims of privileges; that it erred as a matter of law in ordering returned documents pertaining to a criminal prosecution to Longanbach, a former prosecutor who is under criminal investigation, based on his invocation of attorney client and/or work product privileges; in erroneously permitting Longanbach, an attorney suspected of criminal activity, to employ the special master provisions of section 1524, subdivision (c) for his own protection; and in permitting the invocation of privileges in this case to thwart the AG from reviewing materials lawfully seized pursuant to a constitutionally valid search warrant. Essentially, these assertions present two questions: (1) whether a public prosecuting attorney, who is the subject of an ongoing criminal investigation, may use claims of attorney-client privilege, work product protection and privacy to withhold from the investigating authorities review of documents and material seized pursuant to a validly issued and executed search warrant; and (2) whether such suspect public prosecutor is entitled to evidentiary protection similar to that provided by the special master provisions of section 1524, subdivision (c).

Before we can answer these questions, we must address several threshold matters, including the nature of the office of a public prosecuting attorney, the nature of privileges and to what extent a public prosecutor can be a holder of the attorney-client privilege, the work product protection, and a claim of privacy.

■ As this court noted in *People v. Terry* (1994) 30 Cal.App.4th 97 [35 Cal.Rptr.2d 729]: "The district attorney is constituted by statute to conduct

all prosecutions on behalf of the state (Gov. Code, § 26500) and does so nominally in the name of the 'People.' [Citations.] District attorneys are not employees or mere agents, but public officers with public duties 'delegated and entrusted to them, as agents, the performance of which [duties] is an exercise of a part of the governmental functions of the particular political unit for which they, as agents, are active.' [Citations.] As our Supreme Court stated in *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107 [130 Cal.Rptr. 257, 550 P.2d 161], '[t]he district attorney is not an "attorney" who represents a "client" as such. He is a public officer, under the direct supervision of the Attorney General [(Cal. Const., art. V, § 13)], who "represents the sovereign power of the people of the state, by whose authority and in whose name all prosecutions must be conducted." ' (*Id.* at p. 122, quoting *Fleming* v. *Hance* (1908) 153 Cal.162, 167 [94 P. 620].)" (*Id.* at p. 101.)

■ The attorney-client privilege and the work product protection doctrine are both statutory creations. (§ 1054.6; Code Civ. Proc., § 2018; Evid. Code, § 954.) Evidence Code section 954 provides that "a client holds a privilege to prevent the disclosure of confidential communications between client and lawyer. [A] 'client' includes a person who 'consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity' [citation], while 'confidential communications' include 'information transmitted between a client and his or her lawyer in the course of that relationship and in confidence' [citation]." (*People v. Gionis* (1995) 9 Cal.4th 1196, 1207 [40 Cal.Rptr.2d 456, 892 P.2d 1199].)

Although the attorney-client privilege is not constitutionally based, it is the oldest recognized confidential communications privilege. (*Sullivan v. Superior Court* (1972) 29 Cal.App.3d 64, 71 [105 Cal.Rptr. 241].) It is grounded on public policy considerations and "is in furtherance of the proper and orderly functioning of our judicial system, which necessarily depends on the confidential relationship between the attorney and the client." (*People v. Gionis, supra,* 9 Cal.4th at p. 1207.) The purpose of such evidentiary privilege is to safeguard the confidential relationship between a client and counsel so as to promote full and open disclosure of facts and tactics surrounding the case for which the relationship exists. (*People v. Flores* (1977) 71 Cal.App.3d 559 [139 Cal.Rptr. 546].) In enacting such privilege, the Legislature recognized that " 'the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.' " (*Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 600 [208 Cal.Rptr. 886, 691 P.2d 642], quoting *City & County of S. F. v. Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418].) However, the privilege is not absolute and a person claiming an attorney-client

privilege must show that the evidence sought to be protected is within the statutory terms. (*People v. Gionis, supra,* at p. 1208; see also *Vela v. Superior Court* (1989) 208 Cal.App.3d 141, 147 [255 Cal.Rptr. 921].)

■ Attorney work product protection is a separate and distinct doctrine from the attorney-client privilege, and, as noted above, is codified in criminal cases to preclude evidence of an attorney's writings that reflect his or her "impressions, conclusions, opinions or legal research or theories" from being disclosed during discovery to the opponent in litigation.[8] (Code Civ. Proc., § 2018, subd. (c); Pen. Code, § 1054.6; see *Hickman v. Taylor* (1947) 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451].) Thus, statements that merely reflect what a person said during an interview are not work product. (*Hobbs v. Municipal Court* (1991) 233 Cal.App.3d 670 [284 Cal.Rptr. 655].) Although the attorney in such relationship is the holder of the work product protection, under certain circumstances a client may assert such doctrine on behalf of his or her attorney. (See *BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1257 [245 Cal.Rptr. 682].)

■ While it is generally recognized that a public entity, similar to a corporation, has the right to assert the attorney-client privilege (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 370 [20 Cal.Rptr.2d 330, 853 P.2d 496]; *D. I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 733 [36 Cal.Rptr. 468, 388 P.2d 700]; *Vela v. Superior Court, supra,* 208 Cal.App.3d at p. 150), the right of an individual public prosecutor to do so is limited due to the nature of his or her position. Like an individual officer or employee of a corporation, "[w]here the employee's connection with the matter grows out of his employment to the extent that his report or statement is required in the

---

[8]Section 1054.6, which is part of the new reciprocal discovery chapter enacted as part of Proposition 115, provides: "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (c) of Section 2018 of the Code of Civil Procedure . . . ." That subdivision of Code of Civil Procedure section 2018 states: "Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." However, as noted by our Supreme Court in *Izazaga v. Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304], "section 1054.6 expressly limits the definition of 'work product' in criminal cases to 'core' work product, [as provided in subdivision (c) of section 2018 of the Code of Civil Procedure.] Thus, the qualified protection of certain materials under Code of Civil Procedure section 2018, subdivision (b), applicable in civil cases [which provides that the work product of an attorney is nondiscoverable unless the court determines the denial of discovery will unfairly prejudice the party seeking discovery or will result in an injustice,] is no longer available in criminal cases. The more recent statute limiting the definition of work product in criminal cases carves out an exception to the older work product rule applicable to civil and criminal cases alike. [Citation.]" (*Id.* at p. 382, fn. 19, italics omitted.) Moreover, this provision of the criminal statutory discovery scheme does not apply to discovery from third parties. (*People v. Superior Court (Broderick)* (1991) 231 Cal.App.3d 584, 594 [282 Cal.Rptr. 418].)

ordinary course of the corporation's business, the [public prosecutor] is no longer an independent witness, and his [or her] statement or report is that of the [DA] employer." (*D. I. Chadbourne, Inc. v. Superior Court, supra,* at p. 737; see also *Gonzales v. Municipal Court* (1977) 67 Cal.App.3d 111, 117-121 [136 Cal.Rptr. 475].) ■ Thus, depending upon the circumstances, any possible claims of attorney-client privilege, work product protection or privacy regarding documents or statements prepared by a prosecuting attorney, such as DDA Longanbach, made in the course of his employment with the DA, would belong to the DA and not the individual DDA. As the court in *Shepherd* noted, because the district attorney does not have "a 'client' as such," confidentiality regarding the fruits of investigations of a public prosecutor are governed exclusively by Evidence Code section 1040, which controls the assertion of claims for governmental privilege for official information. (*Shepherd v. Superior Court, supra,* 17 Cal.3d at pp. 122-123.) Under such provisions, the court is required to balance the necessity for preserving confidentiality against the interests in disclosure. (*Id.* at pp. 123-128; see also *In re Muszalski* (1975) 52 Cal.App.3d 475, 483 [125 Cal.Rptr. 281].)

■ Moreover, while an individual's constitutional right of privacy (Cal. Const., art. I, § 1 [the California right is broader than the federal constitutional right (*City of Santa Barbara v. Adamson* (1980) 27 Cal.3d 123, 130, fn. 3 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219])]) is properly considered by a court before dissemination of information asserted confidential (see *Britt v. Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766]), no invasion of such right will be found absent a legally protected privacy interest, a reasonable expectation of privacy under the circumstances and conduct constituting a serious invasion of such privacy. (See *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35-37 [26 Cal.Rptr.2d 834, 865 P.2d 633].) "Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." (*Id.* at p. 35.) An invasion of autonomy privacy may be overcome by a showing of a countervailing "compelling interest," while general balancing tests are used when a privacy interest is in bona fide dispute. (*Id.* at p. 34.) As noted above, because of the nature of the public officer positions occupied by the DA and a DDA, it would be difficult to find that a DDA has an individual legally recognizable privacy interest which can be claimed in his or her conduct of prosecutions for the DA or in any use he or she may make of government personnel or property.

■ Applying the above preliminary observations, we can only conclude that Longanbach, as a DDA, who was precluded from practicing law

other than as a public prosecutor unless he obtained the approval of the DA (County of San Diego Board of Supervisors Incompatible Activity Rule), is not the holder of the attorney-client privilege for any materials generated as a DDA. Nor is he able to claim work product protection or a privacy interest for such. Longanbach simply has no legitimate expectation of privacy with respect to his actions as a public servant.

■ This conclusion, however, does not end our inquiry as to the propriety of the court's proceedings under section 1524, subdivision (c). As our extensive legislative background in *PSC Geothermal Services Co. v. Superior Court, supra,* 25 Cal.App.4th 1697 (*Geothermal*) shows, section 1524 was amended in 1978 and 1979 in response to several broad searches of attorneys' offices and the United States Supreme Court's decision in *Zurcher v. Stanford Daily, supra,* 436 U.S. 547, which allowed searches of newspaper offices containing privileged information. (*Geothermal, supra,* at pp. 1702-1707.) As so amended, section 1524 provides in pertinent part: "[N]o search warrant shall issue for any documentary evidence in the possession or under the control of any person, who is a lawyer . . . , a physician . . . , a psychotherapist . . . , or a clergyman . . . , and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested unless [certain procedures have] been complied with . . . ." (*Id.,* subd. (c).) These procedures require that the court appoint a "special master," who is defined by the statute, to accompany the person serving the warrant. (*Id.,* subds. (c)(1), (d).) The special master is to "inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested." (*Id.,* subd. (c)(1).) If the party fails to do so, the special master is authorized to conduct the warranted search. (*Ibid.*) If the served party "states that an item or items should not be disclosed, they shall be sealed by the special master and taken to court for a hearing." (§ 1524, subd. (c)(2).) At such hearing, the party served with the search warrant "shall be entitled to raise any issues that may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law." (*Ibid.*) As we noted in *Geothermal,* Evidence Code section 915 was amended in 1979 to provide that " 'in any hearing conducted pursuant to subdivision (c) of Section 1524 . . . [the special master provisions] in which a claim of privilege is made and the court determines that there is no other feasible means to rule on the validity of such claim other than to require disclosure, the court shall proceed in accordance with subdivision (b),' i.e., hold an in camera hearing. [Citations.]" (*Geothermal,* at p. 1707, fn. 6.)

We also recognized in *Geothermal* that the execution of a search warrant is not beyond the court's control, that it is within the discretion of a court to

utilize procedures similar to those provided for under section 1524, subdivision (c) when such does not apply and there are claims of privilege made to the disclosure of documents or materials seized pursuant to the warrant. (*Geothermal, supra,* 25 Cal.App.4th at pp. 1708-1712; see also *People v. Superior Court (Bauman & Rose)* (1995) 37 Cal.App.4th 1757, 1766-1771 [44 Cal.Rptr.2d 734].) We based such holding on "the court's duty to safeguard disclosure of privileged materials, its power to govern discovery of privileged materials and its power to control its orders so as [to] make them conform to law and justice." (*Geothermal,* at p. 1712.)

In arriving at such conclusion we specifically noted that: "[T]he search [involved there, where a search warrant issued to seize documents from the offices of environmental consultants hired by a law firm to assist in defending various lawsuits,] was not a typical search for evidence and the fruits of criminal activity. Nor was it a search limited to the ongoing investigation of possible wrongdoing. Rather, it appears to be a search designed, at least in part, to penetrate the defense theories of the case by obtaining communications among possible defendants, their attorneys and consultants. Unlike other searches, this search pits a defendant's Sixth Amendment protections against the prosecution's pursuit of a criminal investigation. The District Attorney and his investigators knew the materials they were seeking included privileged documents and work product. They invoked the power of the court to seize the documents in question; the items were seized pursuant to a search warrant. [¶] The purpose of the constitutional requirement of a search warrant is to interpose a magistrate between the police and the person who is the subject of the search. Review by a magistrate provides 'an informed and deliberate review of the circumstances by one who is removed from . . . the often competitive enterprise of ferreting out crime.' [Citation.] If probable cause to search is established, then the magistrate should issue the warrant and allow the search to proceed." (*Geothermal, supra,* 25 Cal.App.4th at p. 1710.)

To meet such conflicting responsibilities under the Fourth Amendment to issue search warrants and under the Sixth Amendment "to protect the right to counsel," we reasoned the court could conduct "an in camera review of materials seized under the search warrant to determine whether the materials are covered by the attorney-client or work product privileges and therefore should not be disclosed to the government." (*Geothermal, supra,* 25 Cal.App.4th at p. 1711.)

The proceeding we are presented with here, however, is vastly different from the one in *Geothermal.* Unlike the search in *Geothermal,* the ones here were not directed at obtaining privileged materials, but were

limited to an ongoing investigation of possible wrongdoings of a public prosecutor and were carefully confined to searching for evidence and fruits of such alleged criminal activity. As such, we do not have the same strong Sixth Amendment implication in this proceeding as in *Geothermal*. Rather we are faced with the competing interests between the rights of a state to issue a warrant to search and seize when there is probable cause to believe incriminating evidence will be found to justify the invasion of privacy protected by the Fourth Amendment (*Zurcher v. Stanford Daily, supra*, 436 U.S. at pp. 554-560 [98 S.Ct. at pp. 1975-1979]) and the long-standing public policies and statutory rights that protect the privacy and confidentiality of the attorney-client relationship. (Evid. Code, §§ 917, 954; Code Civ. Proc., § 2018; Pen. Code, § 1054.6.) Clearly, the special master procedures were adopted to address such competing interests.[9] (*Geothermal, supra*, 25 Cal.App.4th at p. 1707.) ▮ In essence, "the enactment of subdivision (c) of section 1524 shows the Legislature's careful and deliberate balancing of the sanctity of those relationships against law enforcement's right to search the offices of lawyers, physicians, psychotherapists and clergymen when the grounds for issuance of a warrant exist." (*Gordon v. Superior Court* (1997) 55 Cal.App.4th 1546, 1555 [65 Cal.Rptr.2d 53].)

▮ Moreover, with regard to the Fourth Amendment, "[t]he Framers addressed the subject of personal privacy directly in [that amendment, by striking] a balance so that when the State's reason to believe incriminating evidence will be found becomes sufficiently great, the invasion of privacy becomes justified and a warrant to search and seize will issue." (*Fisher v. United States* (1976) 425 U.S. 391, 400 [96 S.Ct. 1569, 1576, 48 L.Ed.2d 39].) Further, in *Andresen v. Maryland, supra*, 427 U.S. 463, the United States Supreme Court found no Fifth Amendment violation in the seizure of business records at an attorney's office, including those written by the attorney defendant whose office was searched. The court there framed the issue as "whether the seizure of these business records, and their admission into evidence at his trial, compelled [the defendant attorney] to testify against himself in violation of the Fifth Amendment." (*Id.* at p. 471 [96 S.Ct. at p. 2744].) The court in answering *no to this question* explained that "[the defendant attorney] was not asked to say or to do anything. The records seized contained statements that petitioner had voluntarily committed to writing. The search for and seizure of these records were conducted by law enforcement personnel. Finally, when these records were introduced at trial, they were authenticated by a handwriting expert, not by [the defendant attorney]. Any compulsion of [defendant attorney] to speak, other than the

---

[9]As previously mentioned, although there is an enhanced privacy interest underlying the attorney-client privilege and the attorney work product doctrine, neither is constitutionally grounded. (See *Izazaga v. Superior Court, supra*, 54 Cal.3d at pp. 379-382.)

inherent psychological pressure to respond at trial to unfavorable evidence, was not present. [¶] This case thus falls within the principle stated by Mr. Justice Holmes: 'A party is privileged from producing the evidence but not from its production.' [Citation.]" (*Id.* at p. 473 [96 S.Ct. at p. 2745].) From this it follows that "if a [person,] without being compelled to do so, creates inculpatory writings and the government obtains them without compelling the [person] to authenticate or vouch for those writings, the Fifth Amendment is not violated." (*People v. Sanchez* (1994) 24 Cal.App.4th 1012, 1024-1025 [30 Cal.Rptr.2d 111].)

 Citing *Andresen*, the court in *Deukmejian v. Superior Court* (1980) 103 Cal.App.3d 253 [162 Cal.Rptr. 857] recognized the enactment of the special master section in section 1524, subdivision (c) "adds credence to what appears to be settled law that search warrants directed against attorneys' files in their offices are not per se 'unreasonable' as violative of the Fourth Amendment." (*Deukmejian,* at p. 260.) We can thus glean from *Andresen* that the execution of the valid search warrants underlying this proceeding, which are not challenged, did not violate Longanbach's Fourth Amendment rights and did not compel him to do anything regarding the documents and material seized pursuant to such warrants to implicate his Fifth Amendment privilege against self-incrimination, nor did it compel him to disclose communications that might be privileged under Evidence Code section 954.[10]

The searches here are also unlike the one in *Geothermal,* and other reported cases we have researched, because they targeted a suspected public attorney who did not have any identifiable innocent clients to protect. Instead, it is the suspected public attorney himself who is seeking privileged protection as the client with his numerous relationships with other attorneys and work product protection for his own notes scribbled while talking to them. Even though it is generally recognized that "[t]he fact that the attorney

---

[10]Evidence Code section 954 states: "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has *a privilege to refuse to disclose, and to prevent another from disclosing,* a confidential communication between client and lawyer if the privilege is claimed by: [¶] (a) The holder of the privilege; [¶] (b) A person who is authorized to claim the privilege by the holder of the privilege; or [¶] (c) The person who was the lawyer at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure. [¶] The relationship of attorney and client shall exist between a law corporation as defined in Article 10 (commencing with Section 6160) of Chapter 4 of Division 3 of the Business and Professions Code and the persons to whom it renders professional services, as well as between such persons and members of the State Bar employed by such corporation to render services to such persons. The word 'persons' as used in this subdivision includes partnerships, corporations, limited liability companies, associations and other groups and entities." (Italics added.)

is suspected of criminal activity does not lessen the client's interest in the confidentiality of his or her files, or obviate the privilege with respect to those files" (*People v. Superior Court (Bauman & Rose), supra,* 37 Cal.App.4th at p. 1766), such presumes that the client is a nonsuspect since the purpose of the legislation enacted to protect searches of law offices is to "protect the privacy of privileged communications and of other records of persons not suspected of criminal activities." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1609 (1979-1980 Reg. Sess.) as amended Aug. 20, 1979, p. 2.)

Here, after finding probable cause to issue search warrants for the DA's office and Longanbach's home, the court appointed special masters to oversee each search. Longanbach made claims of privilege through his attorneys at each location to certain materials seized pursuant to the warrants that were then sealed and taken to the court. The court held two ex parte in camera hearings before ruling on Longanbach's privilege claims. Because Longanbach is suspected of criminal conduct, i.e., he is the target of the criminal investigation for which the search warrants had issued, the special master provision of section 1524 does not apply to him and should not have been used for the search of his home. (*Geothermal, supra,* 25 Cal.App.4th at p. 1702, fn. 4; *People v. Superior Court (Bauman & Rose), supra,* 37 Cal.App.4th at p. 1764.)

In addition, although a special master was properly appointed for search of the DA's office, the special master was required by the statutory provisions to request the specific items being sought from the DA or his designated agents. As noted above, in such search the holder of any claim of privilege for documents or materials from the DA's office is the DA or his designated agents, not Longanbach. Except for a claim of official information privilege for certain material on computer backup tapes, the DA has specifically waived any privileges to items taken from the DA search in this proceeding.

This brings us to several additional questions. Having determined that Longanbach as a public prosecutor may not claim privileges or privacy interests with regard to his work with the DA, we must now determine whether Longanbach, as an individual, may properly claim the attorney-client privilege or assert work product protection in this proceeding. We must then decide whether anything need be done to correct the procedures utilized by the court and special master below in affording Longanbach with protection against the execution of the search warrants for which he did not qualify.

Regarding Longanbach's claims of attorney-client privilege as the client, such would appear to pertain mainly to his relationship with Attorney Lasry

who has been representing him in the underlying criminal investigation, and also to Attorneys O'Neill and Rice who have represented him in various business dealings during his employment as a DDA. Longanbach's claim of work product protection for his own writings appears to be based on his assertion he is acting as his own attorney jointly with the other named attorneys. "The determination of the existence of an attorney-client relationship . . . is one of law." (*Kraus v. Davis* (1970) 6 Cal.App.3d 484, 491 [85 Cal.Rptr. 846].) Where the evidence is conflicting regarding such relationship, it is generally for the trial court to determine and evaluate the factual basis for the claimed relationship. (*Ibid.*) Here, there is no conflict in the evidence respecting the factual basis of Longanbach's claimed attorney-client relationship with Lasry. It is clear from the record that Lasry was and is representing Longanbach in the current criminal investigation. The relationships with O'Neill and Rice, as the trial court found, were with Longanbach as a general partner-client and each attorney representing the partnership. Longanbach's assertion that he was acting as his own attorney at various times is not supported by the record.

It is clear that settled law, legislative history, public policy and the practical considerations mentioned above lead to the conclusion that there is no Sixth Amendment problem with the initial precharging dissemination of documents relating to the relationships between Longanbach and Rice and O'Neill, respectively. On the other hand, California affords a criminal suspect or defendant more rights than afforded an accused under the Sixth Amendment, attaching the right to counsel. We note, for example, California extends the right to counsel to preindictment lineups, which is not required by the Sixth Amendment. (*Kirby v. Illinois* (1972) 406 U.S. 682 [92 S.Ct. 1877, 32 L.Ed.2d 411]; *People v. Bustamante* (1981) 30 Cal.3d 88, 94-102 [177 Cal.Rptr. 576, 634 P.2d 927].) In light of *Bustamante* and out of an abundance of caution, we acknowledge Longanbach's strong privacy interest as a client in his relationship with Attorney Lasry outweighs the state's interest in obtaining the confidential communications of that relationship concerning the underlying criminal investigation.

As to the documents claimed privileged due to relationships with O'Neill and Rice, Longanbach's interests are not paramount to those of the state, which has seized them pursuant to a valid search warrant in its criminal investigation of Longanbach. To allow review by the AG of such documents at this stage of the proceedings does not violate Longanbach's Fourth, Fifth or Sixth Amendment rights. (*Andresen v. Maryland, supra,* 427 U.S. at p. 477 [96 S.Ct. at pp. 2746-2747]; *Fisher v. United States, supra,* 425 U.S. at p. 409 [96 S.Ct. at p. 1580].) Moreover, akin to seizing matters that a person could not be compelled to disclose under the Fifth Amendment, we are

satisfied that Longanbach, as the client in the attorney-client relationship, was not required to disclose, nor was his counsel required to disclose, privileged material. Hence, Evidence Code section 954 was not implicated by the seizure.

Longanbach will have the ordinary protections under the Evidence Code and the procedures under the statutes relating to search and seizure to challenge the disclosure of such evidence should the state decide to charge him with the crimes for which he is under investigation. We express no opinion as to such matters.

Our determination to only permit Longanbach the one attorney-client protection in response to the execution of the search warrants at this stage of the proceedings finds some support in *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4 [56 Cal.Rptr.2d 706, 923 P.2d 1]. Although such case concerned the use of an Evidence Code section other than the attorney-client privilege, Evidence Code section 1157,[11] to prohibit discovery of certain documents relating to the proceedings or records of hospital medical staff or peer review bodies, we find its holding and reasoning instructive.

In *Arnett*, the Medical Board of California had issued an administrative investigative subpoena to secure hospital peer review committee records but was thwarted by the claim of privilege under Evidence Code section 1157. The high court found the term "discovery" had a "specific legal meaning, to wit, the formal exchange of evidentiary information and materials between parties to a pending action." (*Arnett v. Dal Cielo, supra,* 14 Cal.4th at pp. 20, 24.) The court also held that an administrative investigative subpoena that issued before the case was pending was not a discovery tool. (*Id.* at p. 24.) It thus essentially concluded the records sought via such subpoena were subject to disclosure at the investigative stage subject to formal discovery and the exercise of privileges after an action was initiated.

By parity of reasoning, we believe that a search warrant issued before a criminal complaint is filed, as in this case, is similar to the administrative subpoena issued in *Arnett* to investigate crimes or fraud before the actual case there was filed. As such, a search warrant, like an administrative subpoena, is not a discovery tool as contemplated under the Evidence Code. Therefore, attorney work product protection, which applies in criminal cases as part of the reciprocal discovery chapter, would only be available to

---

[11]Evidence Code section 1157 provides in pertinent part: "Neither the proceedings nor the records of organized committees of medical . . . staffs in hospitals, or of a peer review body . . . having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, . . . shall be subject to discovery."

prevent disclosure after a case is pending and would not be available to claim here to preclude the AG from initially reviewing evidence that is constitutionally seized under a properly issued warrant. (See also *Kizer v. Sulnick* (1988) 202 Cal.App.3d 431, 440-442 [248 Cal.Rptr. 712].) Although we decided differently in *Geothermal,* using the term "discovery" in a common sense to mean the uncovering of evidence by any avenue, including seizing evidence under a search warrant, we did not have the benefit of the determination in *Arnett* that such term has a specific legal meaning. Further, as we have noted, the search in that case was of a wholly different nature from that which occurred in the case before us. This case does not raise any implication of an attempt to intrude upon the right to counsel in the defense of a criminal matter. (See *Geothermal, supra,* 25 Cal.App.4th at p. 1712.)

At the risk of repetition, but for the sake of clarity, we summarize our findings before finally resolving the matter before us. As we have found, Longanbach as a public prosecutor has no legitimate expectation of privacy with respect to his actions as a public servant and has no standing to claim any privileges or work product protection in any materials he generated as a DDA. Although Longanbach is entitled under California's greater right to counsel protections, as an individual, to claim the attorney-client privilege with regard to his relationship as client with Attorney Lasry stemming out of the very criminal investigation from which the search warrants issued, he is not entitled to thwart the dissemination of documents seized during the searches by claiming such privilege with regard to Attorneys O'Neill and Rice. Nor is he entitled to claim work product protection based on self-representation in this case.

Because Longanbach is the target of an ongoing criminal investigation, suspected of wrongdoing while employed as a public prosecutor, we have also found he was not and is not entitled to the protections of the special master proceedings under section 1524, subdivision (c). Although the AG initially acquiesced in such procedures, we find Longanbach is not entitled to receive further benefits under the special master proceeding.

In conclusion, because the DA is the privilege holder with regard to the documents and materials seized from the DA's office, with the exception of those items the court identified in the ex parte in camera hearings as being protected by the attorney-client relationship between Lasry as the attorney and Longanbach as the client, Longanbach has no standing to claim any privilege with regard to other materials taken from that public office. Therefore, the court's order of May 8, 2000, reappointing a special master for Longanbach's protection to review the information from the computer backup tapes at the DA's office, is invalid and must be vacated.

As to the court's order of May 12, 2000 (clarified on May 26, 2000), we do not review each ruling of privilege. Rather, consistent with our above discussion, we uphold the court's rulings only with regard to item Nos. 1906 and 1907 seized from Longanbach's home, and item Nos. 3100, 3103,[12] 3033, and 3037 seized from the DA's office, which are supported by the record as being protected by the attorney-client privilege based on the relationship between Longanbach and Lasry in this criminal investigation. We also uphold the court's rulings on those items for which it overruled claims of privilege. In all other respects, the order is vacated. The sealed material is ordered to be released to the AG at the time this decision becomes final.

## DISPOSITION

Let a writ issue directing the superior court to vacate its orders of May 8 and May 12 (clarified on May 26), 2000, and to enter new orders consistent with this opinion. This decision will become final as to this court 10 days after it is filed. (Cal. Rules of Court, rule 24(d).)[13] At that time, the stay issued by this court on May 26, 2000, will be vacated. In the interest of justice, no costs are awarded. (Cal. Rules of Court, rule 56.4.)

Kremer, P. J., and Work, J., concurred.

---

[12]Item No. 3103, the brown briefcase containing personal notes of Longanbach and Lasry, was represented in camera as evidence of communications between Longanbach as client and Lasry as attorney in preparing for proceedings involved with the underlying criminal investigation targeted at Longanbach. The record supports the court's ruling such item and its contents, with the except of one 1999 calendar, are privileged.

[13]See *Ng v. Superior Court* (1992) 4 Cal.4th 29, 34 [13 Cal.Rptr.2d 856, 840 P.2d 961].