Filed 8/8/25  P. v. Boswell CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083353 |
| v. | (Super. Ct. No. SWF2101473) |
| LEON MANH BOSWELL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Stephen J. Gallon, Judge. Affirmed.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Leon Manh Boswell fired multiple shots at E.A. and two of his friends, then chased after and shot at E.A. as he fled. As E.A. lay on the ground after being shot in the buttocks, defendant and his accomplice approached E.A. while wearing ski masks, defendant pointed the gun at his head, and one of them took the three dollars E.A. held in his hand.

A jury convicted defendant of attempted murder (Pen. Code, §§ 187, subd. (a), 667, subd. (a); count 1),[1] robbery (§ 213; count 5), assault with a semiautomatic firearm (§ 245, subd. (b); counts 6-8), and shooting at an occupied vehicle (§ 246; count 10). As to counts 1 and 5, the jury found true the allegation that defendant personally and intentionally discharged a firearm, proximately causing great bodily injury or death (§ 12022.53, subd. (d)), and as to counts 6 through 9 that he personally used a firearm (§ 12022.5, subd. (a)). The trial court sentenced him to a determinate term of 12 years, plus an indeterminate term of 25 years to life for the firearm enhancement.

Defendant contends the trial court (1) impermissibly admitted evidence of his involvement in a similar but uncharged robbery, (2) improperly denied his request for a jury instruction of attempted voluntary manslaughter, and (3) these two errors individually and cumulatively warrant reversal. Defendant also argues (4) there is

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

insufficient evidence that he committed robbery and (5) the matter should be remanded for resentencing. We reject defendant's contentions and affirm the judgment.

## II.

## DISCUSSION

In September 2021, defendant and his accomplices, D.B. and S.M., messaged E.A. and B.A. to meet at a park so the trio could buy marijuana wax. E.A. and B.A. did not respond, so the trio asked a mutual acquaintance to ask E.A. and B.A. to meet him to buy marijuana wax at the park.

Later that night, defendant, S.M., and D.B. went to benches near the bathroom at the park to smoke marijuana. S.M. then walked to meet E.A. in a car in the parking lot. E.A. was sitting in a backseat while B.A. drove, M.O. sat in the front passenger seat, and M.P. was in another backseat. When E.A. showed S.M. the marijuana wax, S.M. grabbed it and ran toward defendant and D.B. E.A. ran after S.M., but quickly lost sight of him and turned around to head back to the car. E.A. then heard someone yell "we're gonna kill you" and "a lot of curse words" and saw a blue laser pointer pass over the car. Multiple bullets then hit the car.

B.A. sped off before E.A. got back to the car, so E.A. ran toward a field away from the parking lot. As he ran, he saw the blue laser passing his legs onto the grass in front of him. The shooter was "aiming right at [him]" and he "kept getting shot at." E.A. tripped and, while on the ground, he saw two silhouettes chasing him and firing a gun. E.A. got

3

up and resumed running in a zig zag to avoid being shot. As he approached stairs at the other side of the field, he was shot in the buttocks and fell to the ground.

While E.A. lay on the ground immobilized, defendant and D.B. approached E.A. Both of them were wearing ski masks and defendant was holding a gun. As defendant pointed the gun at E.A.'s head, E.A. held out all the money he had (three one dollar bills) to try to distract them so they would not shoot him. One of them took E.A.'s money, and then they ran away.

When questioned by law enforcement after his arrest, defendant admitted he fired multiple rounds. Although he claimed he shot two of those rounds in the air while yelling at E.A. to stop, he admitted that he aimed and shot at E.A.'s leg. He stated that he did not know in advance that S.M. intended to steal the marijuana wax, but suspected that was his plan since he was homeless and needed money.

At trial, defendant testified he fired the shots to "protect" S.M. and "diffuse the situation." Defendant thought S.M. was just going to pick up marijuana, but heard him arguing with people in the car and then running away from two people chasing him. According to defendant's trial testimony, S.M. ran toward him and D.B. and the three of them started running toward defendant's house.

As they ran, E.A. pursued S.M., who was slower and running behind D.B. and defendant. Defendant told E.A. to stop, but he continued pursuing S.M., so defendant shot the gun into the air and told E.A. to stop. E.A. did not comply, so defendant fired a round into the air and told E.A. to stop. Because E.A. did not comply, defendant fired a third round into the air and told E.A. to stop, but he refused. Defendant was scared for S.M. because he thought E.A. had a gun given that he continued to chase S.M. despite defendant firing three rounds into the air. Defendant then shot a round into the ground to get E.A. to stop chasing S.M. and "diffuse the situation," but the bullet hit E.A. in the buttocks.

Defendant walked to E.A. on the ground to "see if he was all right," but they did not say anything. Defendant denied he was wearing a ski mask at the time, and also denied pointing the gun at E.A. E.A. removed the three dollars from his pocket, but defendant did not take it and did not know if D.B. did. Defendant, S.M., and D.B. then ran to defendant's house.

III.

DISCUSSION

A. *Uncharged Robbery Evidence*

1. *Background*

The People moved before trial to introduce evidence of defendant's involvement in an uncharged robbery from 2020, depending on if and how he testified about the incident with E.A. The People claimed that, during the 2020 incident, defendant and two

5

cohorts "lured" an individual to an area "by the bathrooms in the same exact park before robbing that person at gunpoint." Defendant was not charged or arrested, but his cohorts were convicted in juvenile court. The People therefore wanted to introduce evidence of the 2020 incident to show the jury that defendant "sees how it works, plan, intent, preparation." The trial court decided to rule on the motion later so that the parties could review the police reports for the 2020 incident.

After defendant had testified at length, the trial court ruled that evidence of the 2020 incident was admissible. The court reasoned that, since defendant testified that he did not know S.M. intended to rob E.A., evidence of the 2020 incident was "extremely probative . . . as to what was going through [defendant's] mind" and whether the court would give a voluntary manslaughter instruction. The court further reasoned that the evidence was "very probative" given that the uncharged offense occurred in the same park about a year prior.

When asked about the 2020 incident on direct examination, defendant denied any involvement. He explained that he heard there was a robbery in the park and the police issued a search warrant for his house and took his phone, but he knew the victim, who "misstated" that he was at the park during the robbery. After talking with the police, they returned his phone and that was the end of it.

On cross-examination, the prosecutor asked defendant five questions about the incident: 1. "You were one of three males that day who robbed a kid at the park; is that correct?"; 2. "So, you weren't one of those three guys who lured a 16-year-old over to the bathroom that day?"; 3. "You weren't one of the three males who then held a gun to that kid's face, robbed him of his backpack?"; 4. "So you weren't one of those three guys that walked away laughing after you robbed him at gunpoint at that same park by that same bathroom?"; and 5. "[S]o on that incident, so you're saying that you had nothing to do with that gunpoint robbery at that same exact park, that same exact bathroom, three people luring somebody there with a gun in December of 2020?" Again, defendant denied any involvement, and denied being at the park at the time of the robbery.

Defense counsel did not address the 2020 incident in rebuttal, and neither party addressed it in closing statements.

The trial court then instructed the jury with CALCRIM No. 375, entitled "Evidence of Uncharged Offense to Prove Knowledge or lack thereof." The instruction read in relevant part: "The People presented evidence that the defendant about one year prior, committed the offense of robbery or was present during the alleged robbery incident that was not charged in this case. [¶] . . . [¶] . . . [¶] If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] The defendant knew or believed there was a need for defense of others when he allegedly acted in this case. [¶]

7

Do not consider this evidence for any other purpose except for the limited purpose of lack of need for defense of others."

2. *Applicable Law and Standard of Review*

Evidence Code section 1101, subdivision (a) prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of the statute clarifies that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition, including intent, the existence of a common plan or identity.

"When the prosecution seeks to prove the defendant's identity as the perpetrator of the charged offense with evidence he had committed uncharged offenses, the admissibility of evidence of the uncharged offenses turns on proof that the charged and uncharged offenses share sufficient distinctive common features to raise an inference of identity. A lesser degree of similarity is required to establish the existence of a common plan or scheme and still less similarity is required to establish intent." (*People v. Lindberg* (2008) 45 Cal.4th 1, 23.) Ultimately, "'[t]he admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence,'" including whether the evidence is subject to exclusion under section 352 as more prejudicial than probative. (*People v. Lindberg*,

8

*supra*, at p. 23; See *People v. Balcom* (1994) 7 Cal.4th 414, 426 [trial court must still evaluate evidence for admissibility under Evidence Code section 352 after finding it admissible under Evidence Code section 1101, subdivision (a)].)  These principles are reflected in CALCRIM No. 375.  (See *People v. Virgil* (2011) 51 Cal.4th 1210, 1259-1260.)

We review the trial court's admission of evidence of the uncharged 2020 offense under both Evidence Code sections 1101 and 352 for an abuse of discretion.  (*People v. Medina* (1995) 11 Cal.4th 694, 748-749; *People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1610).

3.  *Analysis*

We find no abuse of discretion here.

The uncharged offense and the offense here were similar in several respects.  They both involved three assailants robbing the victim at gunpoint in the same general area of the same park.  And in both incidents, the victims were "lured" to the park by the assailants.  Given these similarities, the trial court reasonably found that the incidents were sufficiently similar to find evidence of the 2020 incident admissible under Evidence Code section 1101.

The trial court also did not abuse its discretion in finding that the evidence was inadmissible under Evidence Code section 352.  To begin with, the 2020 incident was not too remote in time given that it occurred about a year before the incident in this case. (See *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395.)  The 2020 was also less

9

inflammatory given that it did not involve a shooting, an armed chase, or injuries. (See *People v. Leon* (2015) 61 Cal.4th 569, 599-600.) The evidence took a minimal amount of time to address—a handful of questions and answers on direct and cross-examination— and there was little to no chance the jurors were confused by the straightforward, limited evidence about the 2020 incident. (See *ibid*.; *People v. Foster* (2010) 50 Cal.4th 1301, 1332.) Given the probative nature of the evidence, the court thus properly found that the evidence should not be excluded under Evidence Code section 352.

B. *Attempted Voluntary Manslaughter Instruction*

Defendant argues the trial court erred by instructing the jury on attempted voluntary manslaughter only based on imperfect self-defense and refusing his request to instruct the jury on the offense based on heat of passion. We disagree.

We review de novo the trial court's refusal to instruct on a lesser included offense. (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30.) A trial court must instruct on a lesser included offense where "there is 'substantial evidence' from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense" charged. (*People v. DePriest* (2007) 42 Cal.4th 1, 50.) Because attempted voluntary manslaughter is a lesser included offense of attempted murder, the trial court had an obligation to instruct the jury on attempted voluntary manslaughter. (See *People v. Beltran* (2013) 56 Cal.4th 935, 942.) However, the trial court had to instruct on how a heat-of-passion defense could reduce attempted murder to attempted

10

voluntary manslaughter on if there was substantial evidence that defendant acted in the heat of passion. (See *People v. Lee* (1999) 20 Cal.4th 47, 60.)

There was no such evidence. The heat-of-passion theory has two elements. "First, the provocation which incites the [attempted] killer to act in the heat of passion . . . must be caused by the victim or reasonably believed by the accused to have been engaged in by the [victim]. [Citations.] Second, . . . the provocation must be such as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." (*People v. Lujan* (2001) 92 Cal.App.4th 1389, 1411-1412.)

Even if there was sufficient provocation, there is no evidence that the defendant's reason was clouded "as the result of a strong passion," such that it overcame his ability to act based on reason and due deliberation. (*People v. Breverman* (1998) 19 Cal.4th 142, 163.) Assuming defendant's testimony was true, the evidence strongly suggested that defendant acted deliberately and in a calculated way in an attempt to protect S.M. According to defendant, he shot in the air while yelling at E.A. to stop. When E.A. did not comply, defendant repeated did so again. And when E.A. still did not comply, defendant shot in the air and told E.A. to stop for a third time. It was only when E.A. continued pursuing S.M. that defendant aimed in E.A.'s direction and shot a fourth round, this time into the ground.

Taking defendant's testimony as true, this series of decisions does not show someone acting under the heat of passion, but instead shows someone acting in the defense of another. A heat of passion instruction therefore was not justified. (See *People v. Moye* (2009) 47 Cal.4th 537, 554 [heat of passion instruction not warranted because "thrust of [the defendant's] testimony below was [defense of others]".) The trial court was not required "to disregard the evidence in order to find that the jury should consider whether defendant subjectively killed in the heat of passion, when no substantial evidence supported that theory of manslaughter, and the evidence actually introduced on the point—the defendant's own testimony—was to the contrary." (*Ibid*.)

C. *Cumulative Error*

Defendant next argues that the admission of evidence of the uncharged offense and the alleged instructional error cumulatively warrant reversal. But because we find no error, there is necessarily no cumulative error. (*People v. Lopez* (2018) 5 Cal.5th 339, 371.)

D. *Robbery*

Defendant contends insufficient evidence supports his robbery conviction. We disagree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the

12

defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg*, *supra*, 45 Cal.4th at p. 27.)

Thus, "'[i]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) We may reverse a conviction for a lack of substantial evidence only if it appears ""'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'"" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

Robbery is the "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211; *People v. Scott* (2009) 45 Cal.4th 743, 749.) The trial court thus properly instructed the jury on robbery as follows: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant took property that was not his own; [¶] 2. The property was in the possession of another person; [¶] 3. The property was taken from the other person or his or her immediate presence; [¶] 4. The

13

property was taken against that person's will;  [¶]  5. The defendant used force or fear to take the property or to prevent the person from resisting;  [¶]  AND  [¶]  6. When the defendant used force or fear, he intended to deprive the owner of the property permanently."

Defendant contends there was insufficient evidence that the three dollars was taken against E.A.'s will or that he used force or fear to take the money.  We disagree. E.A. testified that two masked assailants (defendant and D.B.) approached him as he lay on the ground immobilized after he was shot in the buttocks, then the one with the gun pointed it at his head.  E.A. held out the three dollars to "distract them before any other shots were fired," one of the assailants grabbed the money, and then they took off.  From this evidence, the jury could reasonably find infer that E.A. was fearful and felt compelled to hand over his money or else he risked being shot.  The jury thus reasonably found that defendant robbed E.A.

E.  *Resentencing*

Defendant contends he is entitled to a resentencing hearing based on the Supreme Court's recent holding in *People v. McDavid* (2024) 15 Cal.5th 1015.  We disagree.

*McDavid* held that trial courts have the discretion to strike a section 12022.53 firearm enhancement and impose a lesser included, uncharged enhancement under a different statute, such as section 12022.5.  (*People v. McDavid*, *supra*, 15 Cal.5th at p. 1021.)  At the time of defendant's sentencing hearing, the Courts of Appeal were split on the issue, and *McDavid* resolved that split.  (*Id*. at p. 1022.)  Our Supreme Court clarified

14

that "after striking a section 12022.53 enhancement" under section 1385, the court has discretion "to impose a lesser included, uncharged enhancement authorized elsewhere in the Penal Code—that is, outside of section 12022.53" if the facts supporting such an enhancement have been alleged and found true. (*People v. McDavid*, *supra*, at p. 1021.)

At his sentencing hearing, defendant asked the trial court to dismiss the firearm enhancement on count 1, but he did not ask the court to reduce the length of the firearm enhancement imposed under section 12022.53, subdivision (d), by imposing a lesser enhancement under section 12022.53 or an uncharged firearm enhancement under section 12022.5. Defendant now asks us to remand the case so that he can ask the trial court to impose a term for an uncharged firearm enhancement instead of the 25-years-to-life term the court imposed for the firearm enhancement.

We conclude defendant forfeited the argument. Although the Courts of Appeal were split at the time of defendant's sentencing in February 2024, this court had already held in September 2022, consistent with *McDavid*, that the trial courts have discretion to impose an uncharged lesser included enhancement under section 12022.5 after striking a greater enhancement under section 12022.53. (*People v. Fuller* (2022) 83 Cal.App.5th 394, 397.) In other words, this court had already held nearly 17 months prior to defendant's sentencing hearing that courts have the discretion to make the exact sentencing decision he now wants to ask the trial court to make on remand.

Although a change in the law can excuse a forfeited objection or argument, "[i]n determining whether the significance of a change in the law excuses counsel's failure to object [below], we consider the 'state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial.'" (*People v. Black* (2007) 41 Cal.4th 799, 811.) Given our decision in *People v. Fuller*, *supra*, 83 Cal.App.4th 394, which issued long before sentencing occurred in this case, defendant should have asked the trial court to follow *Fuller* and impose a lesser term for an uncharged enhancement instead of the 25-years-to-life term, if defendant thought that would have been appropriate. His failure to do so forfeits the issue.

In his reply brief, defendant argues for the first time that, if we find the issue is forfeited, we still can and should review the issue because counsel's failure to ask for a lesser term constituted ineffective assistance of counsel. We believe the issue should be resolved through a petition for habeas corpus and decline to reach it here. *People v. Lucas* (2014) 60 Cal.4th 153, 307 ["[T]the proper way to raise a claim of ineffective assistance of counsel is generally by writ of habeas corpus, not appeal."], disapproved of on another ground in *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19; *People v. Duff* (2014) 58 Cal.4th 527, 550 fn. 9 [declining to reach ineffective assistance of counsel claim raised for first time in reply brief and noting that "[i]t is rarely appropriate to resolve an ineffective assistance claim on direct appeal"].).

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.